628 A.2d 1230

**Luigi D'EMILIO, Appellant,**

v.

**BOARD OF SUPERVISORS, TOWNSHIP
OF BENSALEM, Appellee.**

Commonwealth Court of Pennsylvania.

Argued May 10, 1993.

Decided July 9, 1993.

Emil L. Iannelli, for appellant.

Darrell M. Zaslow, for appellee.

Before PALLADINO and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

PALLADINO, Judge.

Luigi D'Emilio (Developer) appeals from a November 26, 1991 order of the Court of Common Pleas of Bucks County (trial court) dismissing Developer's motions in arrest of judgment and for a new trial. We affirm.

Developer owns a 3.17 acre tract of land in the Township of Bensalem (Township). In 1985 and 1986, Developer submitted land development plans for a retail and office complex to the Board of Supervisors, Township of Bensalem (Supervisors) for approval. The Supervisors rejected the plans. Developer appealed to the trial court. Subsequent negotiations between Developer and the Township resulted in a new plan dated May 4, 1988. By stipulation of settlement, the parties accepted the May 4, 1988 plan as the final land development plan, and the trial court approved the plan by order dated June 16, 1988 (the court approved plan).

As a result of subsequent meetings with property owners in the vicinity of the proposed development site, minor modifications were made to the court approved plan by revision dated July 8, 1988 (the revised court approved plan).

On July 14, 1988, Developer met with the township engineer, Herbert T. Scheuren, Jr. (Scheuren), and presented a radically modified plan for the site (the unapproved plan). The unapproved plan altered, among other things, the use, size, shape and set-backs of the building, the traffic patterns and parking lots, the detention basins, and the landscaping. The unapproved plan likewise bore a July 8, 1988 revision date, but contained no indication that it was separate or different from the revised court approved plan.

Specifically, the trial court found:

12. At the July 14, 1988 [Developer]/Scheuren meeting, Scheuren signed the [unapproved plan], and agreed with [Developer] to obtain the signatures of the Township Supervisors upon the documents. At that time Scheuren knew that the [unapproved plan] had not been seen by any Township officials, Planning Commission members, Township attorneys, disgruntled neighbors, [sic] had not been

reviewed by anyone on behalf of the Township, the County, or the Court. He also does not claim that he mistook the [unapproved plan] for the [revised court approved plan] for such a contention would be ludicrous considering the extent of the changes reflected in the [unapproved plan].

13. Nevertheless, four days later, at the Township Supervisors meeting on July 18, 1988, Scheuren made no mention of all the changes in the plan he was submitting to the Supervisors for their final approval and signature, and in fact, submitted the plans for signature in a folded up manner so that the Supervisors were not able to see the plan for fear they might have realized there were many significant changes from the Court approved plan.

14. [Developer], upon receiving the signed plan, never recorded it in the Bucks County Recorder of Deeds Office, notwithstanding that would have been the normal procedure. Recording would have made the plan available for public scrutiny and possible discovery that secretly a new plan had been substituted and signed as a result of the fraud of [Developer] and Scheuren.

15. Scheuren prepared estimated construction costs for escrow agreements in accordance with the figures contained on the plan the Supervisors thought they were approving and signing ([the revised court approved plan]) also to avoid discovery of the fraud in the event anyone should double check the figures.

16. [Developer] did not inform his own attorney, who had negotiated the Court approved settlement, of the changes to avoid any risk his attorney might inquire whether the changes were approved and the incidental discovery of the fraud.

17. [Developer] did not attend the July 18, 1988 Supervisors meeting, nor instruct any of his representatives to attend the meeting, to avoid any risk that he or they might be questioned about the plan and the incident discovery of the fraudulent changes, and further, because he knew he could rely upon Scheuren to complete the fraud for him at the meeting.

18. The Supervisors of Bensalem Township, at their meeting on July 18, 1988, were informed that they were approving and signing the [revised court approved plan]. Therefore, [the revised court approved plan] reflects the plan upon which [Developer] is properly authorized to proceed.

19. The Court specifically rejects and finds incredible the testimony of [Developer], and his witnesses [Developer's engineer] and Herbert T. Scheuren, Jr., seeking to explain the signatures of the Bensalem Township Supervisors on [the unapproved plan].

20. The court specifically finds that at the meeting between [Developer] and Herbert T. Scheuren, Jr., on July 14, 1988, an agreement was reached between the two whereupon [Developer] induced Scheuren, who thereupon agreed, to perpetrate a fraud on Bensalem Township and to secure the Township Supervisors' signatures on a plan that they both knew the Supervisors would never approve or sign if they, the Supervisors, were aware of its content.

Trial court's July 12, 1990 opinion and order.

In December 1989, Developer received a building permit from the Township, and thereafter commenced construction on the site. By May 1990, it became apparent that the construction was not conforming with the court approved plan. On May 25, 1990, the Township filed a motion for a post-trial hearing in the nature of a claim for declaratory relief, requesting that Developer be compelled to build in conformity with the court approved plan.

After three days of hearings, the trial court issued its July 12, 1990 opinion and order. The trial court authorized Developer to improve his property pursuant to the revised court approved plan, ordered Developer to cease and desist from making any improvements to his property pursuant to any other plan, and ordered Developer to remove from his property any and all improvements, construction and structures inconsistent with the revised court approved plan.

Developer's motions in arrest of judgment and for a new trial were denied by the trial court by opinion and order dated

November 26, 1991. On that same date, Developer filed a petition for rehearing and reconsideration. The trial court denied that petition by order dated December 6, 1991.

■ On appeal to this court,[1] Developer raises the following issues: 1) whether the trial court abused its discretion in determining that the signatures on the unapproved plan were obtained by fraud; 2) whether the trial court erred in denying Developer a new trial based on after-discovered evidence; and 3) whether the trial court can order Developer to remove the existing structures and improvements.

As to the issue of fraud, Developer argues that the trial court's findings of fact are not supported by substantial evidence. Specifically, Developer contends that the trial court uses the Supervisors' testimony that Scheuren folded up the plan to construct "an elaborate theory of conspiracy to commit fraud, and ignores all testimony that does not support that theory." Developer's brief at 9–10.

■ Substantial evidence is evidence which a reasonable person could accept as adequate to support findings of fact. *McDermond v. Foster,* 127 Pa.Commonwealth Ct. 151, 561 A.2d 70 (1989). When acting as factfinder, it is the province of a trial court to weigh conflicting testimony and determine credibility. *Richland Township v. Hellerman,* 30 Pa.Commonwealth Ct. 438, 373 A.2d 1367 (1977). It is free to reject even uncontradicted testimony it finds lacking in credibility. *Id.*

Here, the trial court found the testimony of Developer, Developer's engineer, and Scheuren to be "incredible" and concluded:

[w]e have no way of knowing what, if any, inducements may have been made by [Developer] to Scheuren at the July 14, 1988 meeting, to undertake the course of action he did, for as might be expected, neither of those two were likely to

---

1. Our scope of review where the trial court takes evidence is limited to determining whether the trial court committed an error of law or abused its discretion. *Ignelzi v. Zoning Board of Adjustment of the City of Pittsburgh,* 90 Pa.Commonwealth Ct. 350, 495 A.2d 634 (1985).

disclose the content of their discussion. Nevertheless, the circumstantial evidence of the fraud is overwhelming.

Trial court's July 12, 1990 opinion and order at 7.

■ Based on our thorough review of the record, we conclude that the evidence relied upon, though circumstantial, is adequate to support the findings of fact. As such, the trial court did not abuse its discretion in determining that the signatures on the unapproved plan were obtained by fraud.

As to whether the trial court erred in denying Developer a new trial, Developer argues that evidence uncovered at his subsequent criminal proceedings mandates a new trial in this case. Specifically, Developer alleges:

[a]s a result of the grand jury investigation and the criminal trial, [Developer] learned, for the first time, that the Township Supervisors had made a political decision to deny him approval of his development plan, in order to force the court to direct the Township to grant approval. After achieving that goal, the Township Supervisors then secretly approved changes in the plan, and [Scheuren] back-dated the final plan to conform with the last public action taken by the Supervisors with respect to [Developer's] development. When the disgruntled neighbors noticed the change in design and complained, the Supervisors disavowed knowledge of the plan and took action to prevent construction.

Developer's brief at 24.

■ It is well settled that a petition for a new trial based on after-discovered evidence will only be granted if "that evidence: (1) is new; (2) could not have been obtained at trial in the exercise of due diligence; (3) is relevant and non-cumulative; (4) *is not for the purposes of impeachment;* (5) and must be likely to compel a different result." *Cook Appeal,* 107 Pa.Commonwealth Ct. 207, 210, 527 A.2d 1115, 1116 (1987) (citations omitted; emphasis added).

■ It is obvious that Developer's rather vague allegations of wrongdoing by the Supervisors are merely an attempt to impeach testimony already adduced in the trial court. As

such, the trial court did not err in denying Developer a new trial.

As to whether the trial court can order Developer to remove the existing structures and improvements, Developer argues that even if the Supervisors were misled into signing the unapproved plan, the development, as built, cannot be demolished since it complies with all statutes, ordinances, and codes. We disagree. Assuming *arguendo* that the development, as built, complies with all applicable laws, it was nevertheless built in flagrant violation of the land development approval process. As the Supervisors point out in their brief, under Developer's reasoning a landowner could "build whenever, wherever, and however he chose, provided the end result of his development complied with the zoning and land development codes." Supervisors' brief at 15. Clearly, Developer cannot be permitted to profit from his fraud in this manner.

Moreover, we have held that "[w]here deliberate and substantial violations of a zoning ordinance are found, it is appropriate to order removal of non-conforming structures." *Beiler v. Salisbury Township,* 79 Pa.Commonwealth Ct. 213, 217, 468 A.2d 1189, 1191 (1983) (affirming decree which ordered the removal of a barn willfully constructed without a building permit). Since Developer deliberately violated the land development approval process, the trial court was acting within its discretion when it ordered Developer to remove the existing structures and improvements.

Accordingly, we affirm the order of the trial court.

### ORDER

AND NOW, July 9, 1993, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is affirmed.