IN THE COMMONWEATH COURT OF PENNSYLVANIA

William Sowich and Nancy Sowich :
 :
 :
   v. :
 :
The Zoning Hearing Board of Brown :
Township and Edgewood Estates, Inc. :
 :
   v. :
 :
The Zoning Hearing Board of Brown :
Township :
 :
   v. : No. 1555 C.D. 2019
 : Argued: December 7, 2020
Brown Township :
 :
Appeal of: Edgewood Estates, Inc. :


BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge[1]
   HONORABLE PATRICIA A. McCULLOUGH, Judge
   HONORABLE MICHAEL H. WOJCIK, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT   FILED: January 26, 2021


   Edgewood Estates, Inc. (Landowner) has appealed an order of the Court of Common Pleas of Mifflin County (trial court) following a remand from this Court. The issue before this Court is whether Landowner's use of the property for crushing and grinding stone was a lawful nonconforming use that predated the restrictions in the Brown Township Zoning Ordinance (Zoning Ordinance).[2] The trial court held

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

[2] BROWN TOWNSHIP ZONING ORDINANCE (2011).

that evidence of this use by Landowner's predecessor did not entitle Landowner to continue this use. Concluding that the trial court erred, we reverse.

**Background**

The relevant facts and procedural history in this case are as follows. Since 2006, Landowner has owned a 23-acre property in Brown Township (Township). The Township's 1979 Zoning Ordinance placed the northwestern part of Landowner's property in the R-1 (Rural Residential) Zoning District and the southeastern part of the property in the C (Commercial) Zoning District. In February of 2011, the Township amended the Zoning Ordinance, placing the entire property in the R-1 Zoning District, with the exception of a 500-foot-wide strip abutting Route 322, which is zoned Commercial.

On September 28, 2015, the Township's zoning officer issued a notice of violation to Landowner for several activities conducted on the property including "[g]rinding [s]tone to make small stones from large stones[.]" Reproduced Record at 3a (R.R.__). The notice stated that grinding stone is not permitted under the 2011 Zoning Ordinance, which limits the "permitted by right" uses in the R-1 District to the following:

- Agriculture

- Cemetery

- Emergency Services

- Forestry

- House of Worship

- Municipal Building, Park or Playground

- Single Family Detached Dwelling

2

- Vacation Home

ZONING ORDINANCE §502(1); R.R. 595a.

Landowner appealed to the Zoning Hearing Board (Zoning Board), asserting that its activities were lawful nonconforming uses that predated the 2011 amendment to the Zoning Ordinance. On November 23, 2015, the Zoning Board held a hearing, granting intervention to William and Nancy Sowich (Objectors), owners of an adjacent property.

Michael Watson, president and owner of Landowner, testified that his company acquired the property from Trumbull Corporation on April 7, 2006. When Trumbull built a section of Route 322 in early 2000, it dumped the construction debris on the property. Accordingly, when Landowner took possession of the property, there was a 40-foot pile of fill consisting of "[c]oncrete, rock, topsoil, concrete pipe, broken concrete barriers, [and] concrete from highway[.]" Notes of Testimony (N.T.), 11/23/2015, at 34; R.R. 173a. This 40-foot-tall pile sat on top of another pile of aggregate. Watson testified that Landowner uses the property to "haul in fill, to take fill out, to store various construction material[s], as a stock yard." *Id.* at 52; R.R. 191a.

Watson testified that Landowner has crushed stone on the property three times since its acquisition in 2006: in the spring of 2015, sometime in 2013, and "[o]ne other time before that." *Id.* at 60; R.R. 199a. The crushing was necessary to "break the rocks down to smaller rocks" for different uses in Landowner's landscaping and construction business. *Id.* at 61; R.R. 200a.

Before the Zoning Board, Landowner argued that the activities cited in the notice of violation, including stone crushing and grinding, were comparable to

3

those conducted at a sawmill or a planing mill, which use was expressly permitted in the R-1 District under the 1979 Zoning Ordinance.  In support, Watson testified:

> [Counsel]: And can [the property] be used as forestry uses?
>
> [Watson]: Yes.
>
> [Counsel]: In what manner?
>
> [Watson]:  You could put the same thing, you could grind mulch there, you could haul mulch in everyday, you could haul logs in. You can have a sawmill in there…. Because it does have a good base for that.
>
> [Counsel]: To do those kind of uses would [] require putting some kind of heavy machinery in there?
>
> [Watson]:  Yes.
>
> [Counsel]:  And require trucks coming in?
>
> [Watson]:  Yes.

*Id.* at 67-68; R.R. 206a-07a.

By decision of January 7, 2016, the Zoning Board concluded, *inter alia*, that Landowner's use of the property for crushing and grinding stone was not a lawful nonconforming use because it had been abandoned, noting that Watson testified that Landowner had ground stone only three times since 2006.  The Zoning Board concluded, however, that depositing and removing fill was a lawful nonconforming use.

Landowner appealed to the trial court and argued, *inter alia*, that the Zoning Board erred in finding that crushing and grinding stone was a use different from depositing and removing fill.  Landowner filed a motion to present additional

evidence on the question of whether stone crushing was a preexisting nonconforming use.

The trial court granted Landowner's motion and remanded the matter to the Zoning Board to take additional evidence, which it did on May 30, 2017. At the hearing, Watson testified that both Landowner and the prior owner, Trumbull, had deposited "large pieces of concrete," "broken-up concrete," "large rocks, small rocks, fill dirt, shelling material, topsoil, asphalt," and "construction materials [such as] pipe, catch basins" on the property. N.T., 5/30/2017, at 11; R.R. 381a. Landowner sold these materials for the construction of houses, truck garages, roads, and log yards. The rocks cannot be removed, in many cases, or used without first grinding and crushing them. *Id.* at 26; R.R. 396a. Watson testified in pertinent part:

> [Counsel]: Have you [crushed rocks] periodically since you purchased the property?
>
> * * *
>
> [Watson]: We have done that, like I said, I busted up stuff with my hammer on the hoe to get it smaller to get it out of there and we have crushed.
>
> [Counsel]: Have other people also crushed for you?
>
> [Watson]: Yes.
>
> [Counsel]: Or crushed there?
>
> [Watson]: Yes.
>
> * * *
>
> [Counsel]: [Y]ou seem to distinguish between grinding of stone into small stone and fill. What is the difference[?]
>
> [Watson]: The fill we can use on the bottom, but we always need something to cover it, so you can grab on. The only reason I

haven't grounded anything, is I still have some left from the last time I grinded there, so I don't need any at this point.

*Id.* at 22, 40; R.R. 392a, 410a. Landowner submitted business invoices, two of which, dated May 7, 2013, and April 6, 2015, showed that Landowner contracted with Reiff Brothers Excavating for stone crushing.

Numerous witnesses testified about their past business transactions with Landowner. Relevant here, the owner of Fultz Construction Hauling testified that he had been to the property "many times" since Landowner acquired the property, and he saw trucks "bringing in or removing materials" and "the crusher out there operating" "a couple [of] times." N.T., 5/30/2017, at 75; R.R. 445a. The owner of a farm adjacent to Landowner's property testified that he observed "a crusher sitting [on the property]" several times, with the first appearance taking place "[p]robably about 2010 or 2011[.]" *Id.* at 80; R.R. 450a. A former employee of Landowner, Matthew Fisher, testified that between 2007 and 2014, he "sorted rock out," "hauled material in, loaded the crusher, [and] piled the crushings up in piles[.]" *Id.* at 98; R.R. 468a. An employee of Metzler Forest Products, Jamie Fultz, testified that when Landowner purchased the property he "helped put the development in there" and operated heavy equipment. *Id.* at 87; R.R. 457a. More specifically, he testified:

[Counsel]: Did you ever operate equipment yourself there?

[Fultz]: Yes, trackhoes, dozers, everything.

\* \* \*

[Counsel]: How about hammers, break up rock?

[Fultz]: Hammers, yes.

[Counsel]: Grinding operation?

6

[Fultz]: I don't – I just remember Trumbull[]. I don't remember. That must have been after I was employed at Metzler's.

[Counsel]: So you don't – during up to 2007, I think you said you left?

[Fultz]: [Yes].

[Counsel]: The two-year period that [Landowner] owned it, he didn't have any grinding there that you recall?

[Fultz]: Not that I recall of.

[Counsel]: But you said before that you remember it?

[Fultz]: I remember Trumbull had a crusher in there.

[Counsel]: Okay. Do you know when that would have been?

[Fultz]: Well, it would have been around [19]97-[]98.

*Id.* at 87-88; R.R. 457a-58a.

The Zoning Board did not issue a written decision with findings of fact on the additional evidence. Instead, it "transmitted [the record] to the [trial court] for further proceedings." *Id.* at 8; R.R. 378a.

By order and opinion dated April 16, 2018, the trial court affirmed the Zoning Board decision of January 7, 2016. It concluded, *inter alia*, that the use of the property for crushing and grinding stone had been abandoned. Section 1805(5) of the Zoning Ordinance provides that where a nonconforming use has ceased for a period of two years, the property must thereafter be used in conformity with the Zoning Ordinance. ZONING ORDINANCE §1805(5); R.R. 755a. The trial court reasoned that although Landowner had ground stone on the property three times since 2006, this did not establish that "the grinding had been an ongoing operation at any time in the past." Trial Court Opinion, 4/16/2018, at 8; R.R. 104a. Neither

7

the trial court nor the Zoning Board decided whether Landowner's use of the property for crushing and grinding stone constituted a lawful nonconforming use.

## This Court's July 29, 2019, Decision

Landowner appealed to this Court. By decision and order of July 29, 2019, this Court held, *inter alia*, that the trial court erred in affirming the Zoning Board's determination that Landowner had abandoned the grinding use because there was no evidence that Landowner intended to abandon this use and actually did abandon it. *Sowich v. Zoning Hearing Board of Brown Township*, 214 A.3d 775, 786 (Pa. Cmwlth. 2019) (citing *Latrobe Speedway, Inc. v. Zoning Hearing Board of Unity Township*, 686 A.2d 888, 890 (Pa. Cmwlth. 1996)). The trial court did not find whether or not stone grinding operations existed before 2011. Nor did it find whether this activity was substantially similar to a sawmill and planing mill. The 1979 Zoning Ordinance permitted a "sawmill [and] planing mill" in the R-1 District and any other "service or use" "substantially similar to" those described therein. *Former* Zoning Ordinance §502.A(2), 502.A(11); R.R. 796a-97a. The question was whether Landowner's operation was similar to a sawmill and planing mill operation and, as such, lawful under the 1979 Zoning Ordinance. Accordingly, this Court remanded the matter to the trial court to make the necessary findings of fact based on the existing record as supplemented by the additional evidence presented at the May 30, 2017, hearing before the Zoning Board. *Sowich*, 214 A.3d at 790.

## Trial Court's October 4, 2019, Decision

On remand, the trial court held that Landowner did not establish that stone crushing and grinding took place on the property prior to 2011. Watson testified that he had crushed stone on the property three times since 2006: in the spring of 2015, sometime in 2013, and "[o]ne other time before that." N.T.,

11/23/2015, at 60; R.R. 199a. Two invoices submitted by Landowner showed that stone crushing was done on the property in May 2013 and April 2015. Other invoices presented by Landowner did not relate to stone crushing. The trial court further found that the witnesses who testified at the May 30, 2017, remand hearing before the Zoning Board could not definitively "place the crushing operation prior to 2011." Trial Court Opinion, 10/4/2019, at 2-3; R.R. 917a-18a. Although Fultz testified that he saw "a crusher" on the property in 1997 or 1998, the trial court explained that "[t]his crushing was done by a prior owner of the property" and, thus, irrelevant. *Id*. at 4; R.R. 919a.

The trial court further found that "[l]ittle to no testimony" was presented as to whether the stone grinding operation was substantially similar to those conducted at a sawmill and planing mill as allowed under the 1979 Zoning Ordinance. *Id.* at 4; R.R. 919a. Watson testified that both his operation and a sawmill required heavy machinery and trucks. The trial court opined that the use of heavy machinery "is not exclusive to this industry and the [trial court] cannot speculate as to any further similarities." *Id.* at 5; R.R. 920a. The trial court held that Landowner did not establish that grinding stone on the property was a lawful use under the 1979 Zoning Ordinance.

On October 23, 2019, Landowner filed a motion for reconsideration, which the trial court denied on October 29, 2019. Landowner appealed to this Court on November 4, 2019.

9

**Appeal**

On appeal,[3] Landowner argues that the trial court erred in holding that Landowner's use of the property for grinding stone did not constitute a lawful nonconforming use. Landowner presented testimony that grinding stone occurred on the property at least as early as the 1990s. The fact that stone grinding took place under prior ownership was irrelevant to this analysis. A lawful nonconforming use, once established, is "a property right of constitutional dimensions," which "follows the property upon sale to a new owner." Landowner Brief at 17. Further, Watson testified that stone crushing involved equipment and operations similar to those used in a sawmill operation. He pointed out that mulching wood is similar to crushing stone, and both involve large machinery and trucks. The trial court did not discredit Watson's testimony, and neither the Township nor Objectors presented any contrary evidence on this question or even cross-examined Watson. As such, Landowner argues that the trial court erred and abused its discretion in concluding that stone crushing or grinding was not substantially similar to a sawmill operation, which was a use expressly allowed under the 1979 Zoning Ordinance in the R-1 District.

---

[3] Where the trial court does not accept additional evidence, this Court determines on review whether the zoning board committed an error of law or "a manifest abuse of discretion." *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 639 (Pa. 1983). A zoning board abuses its discretion "only if its findings are not supported by substantial evidence." *Id*. at 640. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

However, where the trial court accepts additional evidence, we must determine whether the trial court abused its discretion or committed an error of law. *Crystal Forest Associates, LP v. Buckingham Township Supervisors*, 872 A.2d 206, 212 n.11 (Pa. Cmwlth. 2005). In addition, where a trial court accepts additional evidence concerning only a single issue, the court is not required to hear the entire matter on its merits, and may consider only that specific issue *de novo*. *Id.*; *Cherry Valley Associates v. Stroud Township Board of Supervisors*, 554 A.2d 149, 151 (Pa. Cmwlth. 1989).

Objectors respond that Landowner carries the burden of establishing a lawful nonconforming use, and it did not demonstrate that stone crushing and grinding occurred before the enactment of the 2011 Zoning Ordinance. They also contend that Landowner had the burden to demonstrate that a stone crushing operation has "characteristics in common to a great or significant extent" with a sawmill operation, and it did not meet its burden. Objectors' Brief at 10.

**Analysis**

A lawful nonconforming use is a use that predates the enactment of a prohibitory zoning restriction. *Hafner v. Zoning Hearing Board of Allen Township*, 974 A.2d 1204, 1210 (Pa. Cmwlth. 2009). The ability to maintain a nonconforming use is "only available for uses that were lawful when they came into existence and which existed when the ordinance took effect." *Id.* at 1210-11. "Preexisting illegal uses cannot become nonconforming uses." *Id.* at 1211.

The burden of proving the existence of a nonconforming use lies with the property owner. *Jones v. Township of North Huntingdon Zoning Hearing Board*, 467 A.2d 1206, 1207 (Pa. Cmwlth. 1983). To establish a prior nonconforming use, the property owner must provide "objective evidence that the subject land was devoted to such use at the time the zoning ordinance was enacted." *Smalley v. Zoning Hearing Board of Middletown Township*, 834 A.2d 535, 538-39 (Pa. 2003). Satisfying this burden requires conclusive proof by way of objective evidence of the precise extent, nature, time of creation and continuation of the alleged nonconforming use." *Jones*, 467 A.2d at 1207. When acting as factfinder, "it is the province of a trial court to weigh conflicting testimony and determine credibility." *D'Emilio v. Board of Supervisors, Township of Bensalem*, 628 A.2d 1230, 1233 (Pa.

11

Cmwlth. 1993). The trial court is "free to reject even uncontradicted testimony it finds lacking in credibility." *Id.*

Here, to establish a nonconforming use, Landowner had to prove, first, that the property was used for stone crushing and grinding prior to enactment of the Zoning Ordinance in 2011. In support, Landowner presented testimony of numerous witnesses on the grinding operations on the property. Specifically, Fultz testified that he remembered seeing a crusher on the property in 1997 or 1998. Fultz's testimony was not rejected as incredible; instead, the trial court reasoned that "[t]his crushing was done by a prior owner of the property" and, thus, irrelevant. Trial Court Opinion, 10/4/2019, at 4; R.R. 919a. Landowner argues that the trial court erred in holding that the prior owner's use was irrelevant. A nonconforming use, once established, becomes a vested property right and follows the property. It is not personal to the owner. We agree.

"A lawful nonconforming use establishes in the property owner a vested property right which cannot be abrogated or destroyed unless it is a nuisance, it is abandoned or it is extinguished by eminent domain." *Keystone Outdoor Advertising v. Department of Transportation,* 687 A.2d 47, 51 (Pa. Cmwlth. 1996); *DoMiJo, LLC v. McLain*, 41 A.3d 967 (Pa. Cmwlth. 2012) (property owner was not precluded from continuing nonconforming use of its property on the basis that it failed to timely re-register the use after purchasing the subject property). "As such, a property owner's right to continue operating a legal nonconforming use on its property is *an interest that runs with the land*, so long as the use is not abandoned." *DoMiJo*, 41 A.3d at 972 (emphasis added).

The trial court erred in holding that the prior owner's use of the property for grinding and crushing stone was irrelevant. The trial court accepted the fact that

stone crushing and grinding took place between 1997 and 1998, and this established that this use took place prior to the enactment of the 2011 ordinance. This nonconforming use ran with the land and, thus, Landowner was permitted to continue the use after its acquisition of the property in 2006.

We turn next to the question of whether stone crushing was a lawful use of the property under the 1979 Zoning Ordinance, which did not expressly permit rock crushing. It did permit a "sawmill [and] planing mill," as well as any use "substantially similar to" a sawmill and planing mill. *Former* ZONING ORDINANCE §502.A(2), 502.A(11). Watson testified that a sawmill involved the operation of the same type of heavy equipment and trucks, noting that mulching wood was similar to crushing and grinding stone. Both involve grinding and hauling and "require trucks coming in." N.T., 11/23/2015, at 67-68; R.R. 206a-07a.

Watson testified without contradiction or even cross-examination that the two uses were substantially similar. The trial court did not find Watson's testimony incredible; rather, it found the testimony inadequate, noting that the use of heavy machinery "is not exclusive to this industry." Trial Court Opinion, 10/4/2019, at 5; R.R. 920a. This is true, but the point of the similarity inquiry is to measure the impact of the use, such as "overcrowding of land, blight, danger and congestion in travel and transportation, loss of health, life or property from fire, flood, panic or other dangers." ZONING ORDINANCE §103(B)(2) (regarding purpose and community development objectives of the Zoning Ordinance); R.R. 559a. *See also Frederick v. Allegheny Township Zoning Hearing Board*, 196 A.3d 677 (Pa. Cmwlth. 2018) (stating that "zoning regulates the *use* of land and not the particulars of developments and construction") (quotation omitted). Landowner did not need

13

to provide a technical assessment of the similarities in the business models of a stone grinding and sawmill operation, as suggested by the trial court and Objectors.

Both a sawmill and stone grinding operations are quasi-industrial activities that take place in rural areas. Watson's testimony showed that both activities produce the same impact upon the use of land in terms of truck traffic and noise, and both involve the presence of workers to operate the heavy equipment. Neither the Township nor Objectors challenged Watson's testimony or presented contrary evidence to show a difference in the uses, and the trial court did not discredit Watson's testimony. The trial court abused its discretion in holding that Landowner's evidence on the similarity between stone grinding and sawmill operation was inadequate.

**Conclusion**

In sum, the trial court erred in holding that Landowner's use of the property for grinding stone did not constitute a lawful nonconforming use. The trial court found that stone crushing and grinding took place between 1997 and 1998, and this finding established that the grinding use took place prior to the enactment of the 2011 Zoning Ordinance. Further, Landowner presented uncontroverted evidence that both stone crushing and sawmill operations produce a substantially similar impact upon the use of land in terms of truck traffic and noise, and the trial court did not find that evidence incredible. Landowner's evidence established that a grinding operation was lawful under the 1979 Zoning Ordinance.

For these reasons, we reverse the trial court's October 4, 2019, decision.

_____
MARY HANNAH LEAVITT, President Judge

14

IN THE COMMONWEATH COURT OF PENNSYLVANIA

William Sowich and Nancy Sowich :
:
:
v. :
:
The Zoning Hearing Board of Brown :
Township and Edgewood Estates, Inc. :
:
v. :
:
The Zoning Hearing Board of Brown :
Township :
:
v. : No. 1555 C.D. 2019
:
Brown Township :
:
Appeal of: Edgewood Estates, Inc. :

# **O R D E R**

AND NOW, this 26th day of January, 2021, the order of the Court of Common Pleas of Mifflin County, dated October 4, 2019, in the above-captioned matter is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge