**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| LEO J. DOLAN, JR. AND CHERIE M. DOLAN, H/W | : | No. 51 MAP 2017 |
| | : | |
| | : | Appeal from the Order of the Superior |
| | : | Court at No. 2951 EDA 2015 dated |
| v. | : | February 17, 2017 Vacating the |
| | : | Judgment of the Delaware County |
| | : | Court of Common Pleas, Civil |
| HURD MILLWORK COMPANY, INC., | : | Division, entered August 26, 2015 at |
| BENTLEY HOMES, LTD., GARVIN | : | No. 2005-005801 and Remanding for |
| MITCHELL CORPORATION, CHADWELL | : | New Trial. |
| ASSOCIATES, L.P., CHADWELL | : | |
| REALTY, INC., HARRISON COMMUNITY | : | ARGUED: May 16, 2018 |
| ASSOCIATION | : | |
| | : | |
| | : | |
| APPEAL OF: LEO J. DOLAN, JR. | : | |

## OPINION

**JUSTICE MUNDY**                                   **DECIDED: October 17, 2018**

In this appeal by permission we consider the proper role of an appellate court when reviewing a non-jury decision where it deems the trial court's opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) inadequate, but the trial judge is no longer available to provide a supplemental opinion.

In 1999, Appellant Leo Dolan, Jr. and Cherie M. Dolan[1] entered into an agreement of sale with Bentley Homes, Ltd., Garvin Mitchell Corporation, Chadwell Associates, L.P., Chadwell Realty, Inc. and Harrison Community Association (hereinafter "Bentley") for a

---

[1] Appellant and Cherie M. Dolan were divorced while this matter was pending in the trial court. Ms. Dolan is not a party to this appeal.

new custom house at the purchase price of $1,941,669.00. Settlement took place on November 10, 2000. Hurd Millwork Company, Inc. (Hurd) provided many of the windows used in the construction of Appellant's home. Within a year, the house developed substantial defects, including air and water leaks around the windows.

On April 5, 2001, Hurd filed an action against Bentley for unpaid invoices related to the construction of Appellant's home and other homes in the same development. Bentley filed a counterclaim against Hurd for providing defective windows. In October 2002, Bentley and Hurd entered into a settlement containing admissions that numerous homes in the development suffered from extensive defects and leaks.

During the pendency of the litigation between Hurd and Bentley, Appellant experienced additional problems with his home including severe leaks, rotted wood and issues with a stucco wall. Bentley made some repairs to the home, but the leaks continued to worsen. Appellant hired a civil engineer to assess the home and determine what repairs were required to fix the problems with the house. The repairs and associated costs amounted to $826,695.99.

On May 24, 2005, Appellant filed a writ of summons against Bentley and Hurd. On September 6, 2005, Appellant filed a complaint against Bentley raising the following claims: (1) negligence; (2) breach of express and implied warranty; (3) negligent misrepresentation; (4) fraud and/or intentional misrepresentation; and (5) violations of the Unfair Trade Practice and Consumer Protection Law (UTPCPL). The complaint sought punitive damages against Bentley. The complaint also raised the following claims against Hurd: (1) breach of express and implied warranty; (2) negligence; and (3) products liability. On November 4, 2005, Bentley filed preliminary objections, which the court overruled on February 2, 2006. Bentley then filed an answer, new matter and cross-claim

against Hurd on March 1, 2006. Bentley's cross-claim alleged Hurd was solely or jointly liable for Appellant's injuries.

On March 2, 2006, Hurd filed an answer to Bentley's cross-claim. Hurd then filed a separate answer and new matter to Appellant's complaint on March 13, 2006, and a cross-claim against Bentley, which alleged that Bentley was solely or jointly liable for Appellant's injuries. Bentley filed an answer to Hurd's cross-claim on March 14, 2006. Bentley filed joinder complaints against other parties involved in the construction of Appellant's home. Following settlement discussions, the joined defendants were dismissed from the case, and a settlement agreement was reached between Appellant and Hurd.

The case proceeded to a non-jury trial before Judge James F. Proud on January 6, 2015.[2] Prior to the commencement of testimony, Appellant and Bentley agreed to the defective nature of the Hurd windows used in the construction of Appellant's house. Appellant then presented evidence supporting his claims against Bentley. Bentley did not present any evidence to rebut Appellant's claims. At the conclusion of trial, the court took the matter under advisement. The parties filed proposed findings of fact and conclusions of law on May 20, 2015. On June 18, 2015, the court entered a general verdict in favor of Appellant and awarded him $500,000 in damages.

On June 26, 2015, Bentley filed a motion for post-trial relief, and Appellant filed a motion for delay damages on June 30, 2015. On August, 19, 2015, the court denied

---

[2] Appellant asserts that Bentley waived its cross-claim against Hurd. In support of this contention he cites to a letter from Bentley's counsel to Judge Proud dated December 1, 2014, stating that the Bentley entities "do not intent [sic] to present claims against any third parties at trial." Appellant's Brief, at 8. Bentley did not present any evidence regarding a cross-claim against Hurd, and the trial court made no mention of a cross-claim in its verdict.

Bentley's motion for post-trial relief. On August 21, 2015, the court granted Appellant's motion for delay damages and molded the verdict to $748,287.67.

Bentley filed a timely appeal to the Superior Court. The trial court did not order the filing of a concise statement of errors complained of on appeal, and none was filed. On October 21, 2015, Judge Proud issued a three-page opinion stating, inter alia, that the verdict was against Appellees "jointly and severally." Trial Ct. Op., 10/21/15, at 1. The opinion stated that "[t]he evidence in this case was overwhelmingly in favor of [Appellant]. In fact, [Bentley] presented no evidence whatsoever as either defendants or cross-party plaintiffs." Id. at 1-2. The court continued that "[t]he verdict made a general finding as to liability and disposed of all claims presented." Id. at 2. The opinion notes that Appellant's negligence claims were not barred by the gist of the action doctrine "because such claims were based on the breach of the social duty imposed by the law of torts and not a breach of a duty created by the underlying contract." Id. The court also concluded that the award of delay damages was appropriate.

In its brief to the Superior Court, Bentley raised the following statement of questions involved:

> 1. Whether a party is precluded as a matter of law from obtaining damages for negligence where that claim is barred by the gist of the action doctrine, the economic loss doctrine, and the statute of limitations.
>
> 2. Whether a plaintiff is precluded as a matter of law from obtaining damages for breach of express and implied warranties where those claims cannot be maintained against the named defendants, are barred by the statute of limitations, plaintiffs failed to present evidence of the terms of the express warranties at trial, and plaintiffs failed to give the opportunity to repair or notice of the defects for which the party now seeks an award of damages.
>
> 3. Whether a party is precluded as a matter of law from obtaining damages for negligent misrepresentation and

fraud/intentional misrepresentation where those claims are barred by the gist of the action doctrine, the economic loss doctrine, and the statute of limitations.

4. Whether a party is precluded as a matter of law from obtaining an award of punitive damages where Pennsylvania law does not recognize an independent cause of action for punitive damages and none of the claims can support a claim for punitive damages.

5. Whether a party is precluded as a matter of law from obtaining damages under the [UTPCPL] where that claim can be maintained, if at all, only against the seller and the fraudulent or deceptive conduct upon which the claim is based occurred, if at all, after the purchase of the real property at issue.

6. Whether a party is precluded as a matter of law from obtaining an award of damages where by the party's own admission, the party failed to mitigate its damages and rendered it impossible for the Court to determine the proper amount of damages to award a party.

7. Whether a party is precluded as a matter of law from obtaining an award of damages for breach of contract where the party never [pled] such a claim, did not seek leave at trial to amend to include such a claim, and any such claim is barred by the statute of limitations.

8. Whether a defendant is entitled to an award of indemnification and/or contribution against a co-defendant where the evidence is clear that the co-defendant's conduct caused the injury to the plaintiff and the basis of the defendant's liability to the plaintiff is due to the co-defendant's conduct.

9. Whether a party is precluded as a matter of law from obtaining delay damages where the underlying action is based upon the contractual relationship of the parties to the litigation and delay damages are not available in contract actions.

Bentley's Superior Court Brief, 2951 EDA 2015, at 5-7.

On January 13, 2017, a panel of the Superior Court issued a memorandum decision noting that the trial court opinion was inadequate to allow effective appellate review. The court stated:

> "The purpose of Rule 1925(a) is to give the appellate court a reasoned basis for the trial court's decision and to require a trial court to consider thoroughly decisions regarding post-trial motions." *Gibbs v. Herman*, 714 A.2d 422, 435 (Pa. Super, 1998). "Ordinarily, the remedy for non-compliance with [Rule] 1925(a) is a remand to the trial court with directions that an opinion be prepared and returned to the appellate court." *Cooke v. Equitable Life Assurance [Soc'y] of the United States*, 732 A.2d 723, 727 (Pa. Super. 1999).

*Dolan v. Hurd*, No. 2951, unpublished memorandum at 7 (Pa. Super. filed 1/13/17). Accordingly, the Superior Court remanded to the trial court for a supplemental opinion addressing six specific issues.[3] The panel retained jurisdiction.

On January 25, 2017, President Judge Chad F. Kenney of the Delaware County Court of Common Pleas sent a Response to Remand to the Superior Court explaining that Judge Proud had retired. President Judge Kenney noted that because the issues on remand could only be addressed by Judge Proud, he was returning the record to the Superior Court and would await further instruction on how to proceed.

---

[3] The Superior Court noted:

> The court's supplemental opinion must **(1)** state which of [Dolan's] claims warranted relief; **(2)** provide a detailed explanation for why the court ruled in favor of [Dolan] on those claims; **(3)** explain what type of damages it awarded [Dolan]; **(4)** specify the amount of each type of damages awarded; **(5)** state whether the court found in favor of or against [Bentley] on their cross-claim against Hurd; and **(6)** provide a detailed explanation for the court's denial of each issue raised in [Bentley's] motion for post-trial relief.

*Dolan*, *supra* at 7 (emphasis in original).

On February 17, 2017, the panel issued a memorandum noting that without further explanation from the trial court it was unable to address the issues raised on appeal. It held, "[t]herefore, the best resolution of this appeal is to vacate the judgment and remand for a new trial on liability and damages." Super. Ct. Op., 2/17/17, at 9. In a footnote the Court stated, "[t]he unforeseen circumstances surrounding the resolution of this appeal put the parties in a unique position that could inspire and motivate a settlement." *Id.* at n.2.

We granted allowance of appeal to consider the appropriate role of the appellate court under these circumstances and to determine the scope and standard of review to apply if the appellate court is required to reach the merits of the trial court's decision.

Appellant and Bentley agree that the Superior Court erred by remanding the case for a new trial rather than performing an independent review of the record. They both recognize the relevance of this Court's decision in *Armbruster v. Horowitz*, 813 A.2d 698 (Pa. 2002), but disagree as to whether *Armbruster* controls the instant matter or merely informs our disposition.

The relevant background of *Armbruster* is as follows. In January 1995, Charles Armbruster brought a malpractice action against his dentist, Dr. David Horowitz. The matter proceeded to trial before the Court of Common Pleas of Lackawanna County, and on November 20, 1997, the jury returned a defense verdict finding that Dr. Horowitz was negligent, but that his negligence was not a substantial factor in bringing about Armbruster's harm. On December 1, 1997, Armbruster filed a timely post-trial motion asserting that the jury verdict was against the weight of the evidence. Following the issuance of orders regarding the transcription of notes of testimony, no activity took place on the docket until the trial judge resigned from the bench on October 26, 1998 to assume the position of federal district court judge. On October 28, 1998, Dr. Horowitz filed an

answer to the post-trial motion and a praecipe for judgment on the jury verdict because more than 120 days had elapsed since the filing of the post-trial motion. *See* Pa.R.C.P. 227.4. On October 29, 1998, the prothonotary entered judgment and Armbruster filed an appeal to the Superior Court, again alleging that the verdict was contrary to the weight of the evidence.

On appeal, the Superior Court held that in the exceptional circumstance of a judge leaving the bench without ruling on a post-trial weight of the evidence claim, an appellate court could review the claim. Turning to the merits, the majority held that no relief was warranted. This Court granted allocatur "to determine the proper role of an appellate court in reviewing a preserved weight of the evidence claim where the trial judge did not pass on the question and is no longer available to pass on it." *Armbruster*, 813 A.2d at 702. In affirming the Superior Court, we stated:

> If we were to conclude that an appellate court is totally barred from entertaining a weight claim in the first instance, then, in a situation such as the case *sub judice*, where the actual trial judge is unavailable to rule upon the claim, we would be left to choose between two extreme and unpalatable courses: (1) a rule automatically requiring the grant of a new trial for any properly preserved weight claim; or (2) a rule rendering such claims automatically unavailable to the parties in these instances. The former course would be extremely disruptive to the integrity of verdicts and to the judicial process. As we have noted above, there is some obvious tension between the broad, settled, exclusive role of the fact-finder in assessing credibility and the limited power of trial judges, in narrowly circumscribed circumstances, to overturn those assessments when the judicial conscience is not merely disappointed, or uncomfortable, but "shocked." To automatically **require** a new trial in all instances where the trial judge becomes unavailable to rule upon a post-verdict challenge to the weight of the evidence reverses the presumption that credibility is for the fact-finder, makes the extraordinary the ordinary, and wrongly intrudes upon the jury function.
>
> . . .

> The second extreme course-i.e., a rule that appellate courts cannot pass upon a weight claim in the first instance where the trial judge is unavailable, and thus the claim cannot be pursued on appeal-is not a fair accommodation of the competing interests either. Litigants should not, through no fault of their own, have the arsenal of appellate claims available to them diminished due to factors entirely beyond their control.
>
> Given the obvious deficiencies in either of the extreme courses, we agree with the Superior Court majority below that, where a properly preserved weight of the evidence claim is raised on appeal and the judge who presided at trial failed to rule on the claim and is now permanently unavailable to do so, the claim must be reviewed by the appellate tribunal in the first instance.

*Id.* at 704-05 (emphasis in original).

The Superior Court has issued several decisions relying on *Armbruster* that Appellant asserts are inconsistent with the court's resolution of the instant matter. In *Hartner v. Home Depot USA, Inc.*, 836 A.2d 924 (Pa. Super. 2003), a jury awarded the plaintiff $1,000,000 for knee injuries she sustained while pushing a shopping cart in a parking lot and hitting a raised manhole covered by water.[4] Home Depot filed post-trial motions which were assigned to the trial judge who retired before ruling on them. A newly assigned judge set a hearing, prior to which the plaintiff filed a praecipe for judgment pursuant to Pa.R.C.P. 227.4(1)(b) because no decision had been rendered within 120 days of the filing of post-trial motions. Although the trial court lost jurisdiction due to the entry of judgment, the newly assigned trial judge prepared an opinion pursuant to Pa.R.A.P. 1925(b), which the Superior Court deemed advisory. The court rejected Home Depot's argument that the entry of judgment under Rule 227.4(1)(b) denied it due process by preventing a "proper and complete ruling" by the trial court. *Hartner*, 836 A.2d at 927.

---

[4] The verdict was reduced to $950,000 because the jury found the plaintiff five percent negligent.

However, the Superior Court noted that the newly appointed judge would not have had the benefit of hearing the evidence, and that pursuant to *Armbruster* the Superior Court could review the record and "provide as proper and as complete a ruling as the 'substituted' trial judge could have provided." *Id.* at 928. The Superior Court proceeded to consider Home Depot's weight of the evidence claim, determined that the award of $1,000,000 shocked its conscience, and remanded for a new trial on damages only.

In *Estate of Smaling*, 80 A.3d 485 (Pa. Super. 2013), the orphans' court issued an opinion and order denying a widow's petition seeking to probate an after-discovered will. The widow filed an appeal to the Superior Court and a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, which for the first time raised weight of the evidence issues. Due to the retirement of the original judge, the matter was assigned to a second judge who issued a Rule 1925(a) statement that did not address the issues raised in the Rule 1925(a) statement. Instead, the second judge attached to his Rule 1925(a) statement a copy of the original judge's opinion in support of her order. The Superior Court concluded that because Orphans' Court Rule 7.1 does not require the filing of post-trial motions to preserve a claim for appeal, the widow was entitled to have her weight claims reviewed in the first instance. Relying on *Armbruster*, the Superior Court concluded that "because [the widow] properly preserved her weight of the evidence claim and [the original orphans' court judge] is permanently unable to review it, we will do so here." *Smaling*, 80 A.3d at 493. Following a thorough review of the record, the Superior Court affirmed the decree of the orphans' court.

In *Commonwealth v. Izurieta*, 171 A.3d 803 (Pa. Super. 2017), a defendant was found guilty of several offenses following a jury trial. Because the presiding jurist left the bench before sentencing, a second judge was appointed to decide post-sentence motions, including a weight of the evidence challenge, and to impose sentencing. After

the second judge denied the post-trial motions and imposed sentence, the defendant appealed to the Superior Court, which rejected a request that it vacate the defendant's conviction and remand for a new trial because the trial judge was unable to review his weight of the evidence claim. Relying on *Armbruster*, the court concluded that a new trial was inappropriate under the circumstances. However, it recognized that "the successor judge's opinion should not be afforded the level of discretion given to a judge who presided at the trial in question. The successor judge . . . did not have the opportunity to observe the trial proceedings, and he is therefore in no different position, in terms of the 'cold' record than this Court." *Id.* at 808-09. Therefore, instead of applying a discretionary standard of review as an appellate court usually does when reviewing a challenge to a weight of the evidence decision, "our role . . . is to review the entire record and determine whether the successor judge correctly determined that the jury's verdict was not against the weight of the evidence." *Id.* at 809. Upon review of the testimony and the record, the Superior Court affirmed the trial court.

Appellant asserts that the instant matter:

> is governed by the *Armbruster* rule. The fact that the Superior Court has alleged that the trial judge's opinion was inadequate to the point where they could not provide judicial review is tantamount to that opinion having never been authored. This logical interpretation of judicial precedents evinces that in the present case, where the trial judge is now retired and unavailable, the Superior Court should have reached the merits of the case by reviewing the complete record in the first instance.

Appellant's Brief, at 23. Because *Armbruster* is limited to cases where the trial judge is unavailable to rule on weight of the evidence claims, *Armbruster* and its progeny do not compel broad "merits review of the case." However, *Armbruster* does provide a

framework to decide the instant matter, in which Bentley's appeal to the Superior Court raises legal rather than factual issues.

In *Armbruster*, this Court recognized that requiring a new trial where the lower court failed to rule on post-trial motions raising a challenge to the weight of the evidence was an unfair result. Applying the reasoning of *Armbruster* to this case we conclude that where a Rule 1925(a) opinion is deemed inadequate and the trial judge is unavailable to provide a supplemental opinion, the appellate court should review the legal issues raised in the appellant's Rule 1925(b) statement of errors complained of on appeal. As the Superior Court has noted, when deciding issues of law an appellate court is not required to defer to the conclusions of a trial court. *Cooke v. Equitable Life Assurance Soc'y of the United States*, 723 A.2d 723, 727 (Pa. Super. 1999). This is consistent with the fact that for questions of law, an appellate court's standard of review is *de novo* and its scope of review is plenary. *Shinal v. Toms*, 162 A.3d 429, 438 (Pa. 2017). Applying this standard and scope, the Superior Court will be able to review the entire record and ultimately determine whether the trial court correctly decided the legal issues raised in Bentley's appeal.

As to any factual findings implicated in the issues raised on appeal from the nonjury trial, the Superior Court shall determine whether they are supported by competent evidence. *See De Lage Landen Financial v. M.B. Management*, 888 A.2d 895, 898 (Pa. Super. 2005).

Accordingly, the order of the Superior Court is reversed and the matter is remanded for disposition consistent with this opinion.


Chief Justice Saylor and Justices Baer, Todd, Donohue, Dougherty and Wecht join the opinion.