J-A02006-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHAWN CARR | : | |
| | : | |
| Appellant | : | No. 1428 WDA 2019 |

Appeal from the Judgment of Sentence Entered July 23, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0011720-2018

BEFORE: BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.: **FILED: May 25, 2021**

Shawn Carr appeals from his July 23, 2019 judgment of sentence of five to ten years of incarceration, which was imposed after a jury found him guilty of sexual assault. We affirm.

We glean the following factual and procedural history from the certified record and trial transcripts. Appellant's conviction stems from events that transpired on January 24, 2007, in a Goodwill store located in Pittsburgh, Pennsylvania, where Appellant and the victim, Linda Lou Franklin, were both participating in adult education classes geared towards the hearing impaired. *See* N.T. Trial, 4/23/19, at 53-54. Both Appellant and Ms. Franklin are deaf and communicate primarily through the use of American Sign Language ("ASL"). In January 2007, Ms. Franklin was approximately fifty-two years old and Appellant was twenty-two years old. We also note that Ms. Franklin is intellectually disabled to the extent that she is not capable of independent

living, but she is able to function well socially and reads at approximately a third-grade level.  ***Id***. at 39-41, 46-47.

At Appellant's trial, Ms. Franklin testified that she was "working" at the Goodwill on the day in question, when Appellant followed her into one of the store's bathrooms, grabbed her by the wrists, and would not let her leave.  ***See*** N.T. Trial, 4/23/19, at 4-5, 9.  While she was so restrained, Ms. Franklin stated that Appellant forced her to engage in vaginal and anal sex.  ***Id***. at 8.  Ms. Franklin also testified that she signed "no" to Appellant "repeatedly" during the attack, but that her communication was ignored.  ***Id***.  Afterwards, Ms. Franklin asserted Appellant took "an amount of money" out of her purse.  ***Id***. at 10.  The police were summoned by other Goodwill employees.

Ms. Franklin was transported to UPMC Mercy Hospital, where a rape kit was performed.  ***See*** N.T. Trial, 4/24/19, at 70-71.  Several days later, Appellant was interviewed by the Pittsburgh Police Department in connection with these allegations.  ***Id***. at 85.  Appellant denied being present in the Goodwill at the time of the assault and volunteered to provide a DNA sample to authorities.  ***Id***. at 87.  Thereafter, no further action was taken on the case for approximately ten years.  During the investigation of a separate incident involving Appellant, this case was reopened and Ms. Franklin's rape kit was submitted for analysis.  On October 10, 2018, a DNA sample was collected from Appellant.  ***Id***. at 98.  Ultimately, Appellant's DNA matched the samples contained in Ms. Franklin's rape kit.  ***Id***. at 116.

On August 29, 2018, Appellant was charged with rape, involuntary deviate sexual intercourse ("IDSI"), and sexual assault. A three-day jury trial was held from April 23 through April 25, 2019. The Commonwealth's evidence set forth the version of events described above.[1] At the close of the Commonwealth's case, Appellant submitted a motion for acquittal based upon an allegation that the victim's testimony could not support Appellant's guilt beyond a reasonable doubt because it was sometimes difficult to understand her responses. *Id*. at 131-32 ("I was not able to cross-examine her to such a degree that it could support a finding of guilty beyond a reasonable doubt."). The trial court denied the motion, and specifically found that Appellant's right to confront and cross-examine witnesses was not violated by the victim's testimony. *Id*. at 133

Appellant's defense relied solely upon the testimony of Ms. Franklin's niece, Willa Stotts, who testified extensively regarding a series of written questions that she posed to Ms. Franklin on the day after the assault.[2] Specifically, Ms. Stotts wrote out a series of "yes" and "no" questions, which

---

[1] Ms. Franklin testified at length regarding the assault. *See* N.T. Trial, 4/23/19, at 3-31. Ms. Franklin's sister-in-law, Charlene Franklin, also testified regarding Ms. Franklin's behavior and statements she made after returning from the hospital on the night of the assault. *Id*. at 32-51. A deaf adult educator, Paul Mente, who was working at Goodwill at the time of the assault also testified that Ms. Franklin disclosed to him that Appellant had attacked her and "slapped her all over." *Id*. at 53-60. A number of police officers, analysts, and medical personnel also testified regarding the collection, preservation, and testing of a DNA sample collected from Appellant.

[2] According to Ms. Stotts's testimony, she resorted to using written questions because Ms. Franklin was very agitated and difficult to understand.

Ms. Franklin responded to by checking the appropriate box. The defense introduced an incomplete version of this document at trial. *Id*. at 140, 149-50. In sum, Ms. Franklin's responses to these questions indicated that, contrary to her testimony at trial, her sexual encounter with Appellant had been a consensual transaction for money. *Id*. at 152-55. Ms. Stotts also asserted that Ms. Franklin sometimes uses the term "rape" interchangeably to describe consensual and non-consensual sexual intercourse. *Id*. at 155-56.

Ultimately, the jury found Appellant guilty of sexual assault and found him not guilty of the remaining charges. The trial court sentenced Appellant to a term of five to ten years of incarceration. Appellant filed a timely post-sentence motion that raised the following issues: (1) Appellant's conviction was supported by insufficient evidence; (2) Appellant's conviction was against the weight of the evidence; and (3) Appellant's right to confront witnesses was violated due to the nature of Ms. Franklin's testimony. *See* Appellant's Post-Sentence Motions, 8/1/19, at ¶¶ 7-11. By order dated August 15, 2019, the trial court denied the motions. Appellant filed a timely notice of appeal to this Court. Although Appellant filed a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), the trial court did not file an opinion pursuant to Rule 1925(a) due to unavailability.[3]

_____

[3] The original trial judge in this case was the Hon. Mark V. Tranquilli, who was unavailable to author an opinion pursuant to Pa.R.A.P. 1925(a). *See* Letter, 3/19/20, at 1 ("Due to the Court's unavailability and the unforeseeable nature of its duration, . . . [t]he record shall be transmitted without an opinion as

Appellant has raised the following issues for our consideration:

I. Was the verdict against the sufficiency of the evidence when Linda Franklin's definition of both nonconsensual sex (rape) and consensual sex was the same, *i.e.*, "when people touch you all over"?

II. Was the verdict rendered contrary to the weight of the evidence presented in that the Commonwealth's evidence was too weak, inconsistent, vague and uncertain and the verdict shocks the conscience of the court?

III. Was [Appellant] denied his Sixth Amendment rights under the Confrontation Clause, U.S. Const.[,] Amend. VI, and under Article [I], Section 9 of the [Pennsylvania] Constitution, because he was unable effectively to cross-examine the victim, Linda Franklin?

IV. [Were Appellant's] due process rights for a speedy trial and to be tried without undue delay under the Sixth Amendment of the United States Constitution and Article I[,] Section 9 of the Pennsylvania Constitution violated when the improper 11-year delay in his prosecution caused undue prejudice to [Appellant] in the form of the loss of memories and unavailability of other evidence?

Appellant's brief at 5 (issues reordered).

Appellant's first claim challenges the sufficiency of the evidence adduced by the Commonwealth to sustain Appellant's conviction for sexual assault. Specifically, Appellant asserts that "there was insufficient evidence that the

_____

required under [Rule] 1925(a) in order to avoid undue delay."). Where the original trial judge is "unavailable to provide a supplemental opinion," we are permitted to review both "legal issues" and "factual findings" without the benefit of a Rule 1925(a) opinion. ***See***, ***e.g.***, ***Dolan v. Hurd Millwork Company, Inc.***, 195 A.3d 169, 176 (Pa. 2018). Although ***Dolan*** is a civil matter, we can discern no reason why its holding regarding Rule 1925 should not apply with equal force in the criminal context.

sex act was nonconsensual." Appellant's brief at 16; *see also* 18 Pa.C.S. § 3124.1 ("[A] person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant **without the complainant's consent**." (emphasis added)). Our standard of review in this context is *de novo* and our scope of review is plenary. ***See Commonwealth v. Neysmith***, 192 A.3d 184, 189 (Pa.Super. 2018). We are also mindful of the following well-established legal principles:

> [W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilty to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Sebolka***, 205 A.3d 329, 336-37 (Pa.Super. 2019).

Appellant's arguments concerning sufficiency are focused upon alleged inconsistencies in Ms. Franklin's testimony regarding whether her sexual

contact with Appellant was consensual.[4]  *See* Appellant's brief at 19-25. Viewing the evidence and testimony adduced at trial in the light most favorable to the Commonwealth, there is more than sufficient support in the record for the jury's finding that Appellant's sexual assault of Ms. Franklin was non-consensual.  Indeed, she testified as follows during direct examination:

> Q.  And did you try to stop [Appellant] from putting his penis into your vagina?
>
> A.  I told [Appellant] no repeatedly.  I did tell him no repeatedly.
> Q.  Okay, and –
>
> A.  I was very scared.  I was very scared when that was happening.
>
> Q.  Did you tell [Appellant] no in sign language?
>
> A.  Yes, I did.  I signed no.  Yes, I did.  I signed no.

N.T. Trial, 4/23/19, at 8.

"[T]he uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses."  *Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa.Super. 2006).  "Although Appellant contends that the Commonwealth failed to prove that [the victim] did not consent to the sexual contact, it is for the fact finder to make credibility determinations, and the

_____

[4]  To the extent that Appellant's sufficiency arguments implicate the credibility of Ms. Franklin's testimony, we note that "a review of the sufficiency of the evidence does **not** include an assessment of the credibility of testimony; such a claim goes to the weight of the evidence." *Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa.Super. 2009) (emphasis added).

finder of fact may believe all, part, or none of a witness's testimony." ***Commonwealth v. Andrulewicz***, 911 A.2d 162, 166 (Pa.Super. 2006). Instantly, Ms. Franklin's above-quoted testimony readily presented sufficient evidence to find that Appellant's sexual assault was non-consensual. No relief is due on Appellant's first claim.

Appellant's second claim concerns the weight of the evidence adduced by the Commonwealth and asserts that "the Commonwealth's evidence was of such low quality, tenuous, vague and uncertain as to make the verdict of guilty pure conjecture." Appellant's brief at 40. Our standard of review over this issue is generally well-settled:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> A motion for a new trial based on claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

***Commonwealth v. Windslowe***, 158 A.3d 698, (Pa.Super. 2017).

Although we do not have the benefit of a Rule 1925(a) opinion from the trial court, we note that the trial court denied Appellant's post-sentence motion asserting that the verdict was against the weight of the evidence. *See* Order, 8/15/19, at 1. Consequently, we will review the record to ascertain whether there is support for the trial court's denial.[5] *See Dolan v. Hurd Millwork Company, Inc.*, 195 A.3d 169, 174-76 (Pa. 2018) (holding that an appellate court should address legal and factual issues in the first instance where the original trial judge is unavailable to author a Rule 1925(a) opinion).

Appellant's substantive arguments are focused upon a number of alleged inconsistencies in Ms. Franklin's testimony, which was adduced with the assistance of two ASL translators.[6] During cross-examination, Appellant's attorney competently identified several minor inconsistencies in the victim's

---

[5] *See also*, *e.g.*, *Armbruster v. Horowitz*, 813 A.2d 698, 705 (Pa. 2002) ("[W]here a properly preserved weight of the evidence claim is raised on appeal and the judge who presided at trial failed to rule on the claim and is now permanently unavailable to do so, the claim must be reviewed by the appellate tribunal in the first instance."). Instantly, the trial court issued a ruling on Appellant's post-sentence motion challenging the weight of the evidence, but did not author a Rule 1925(a) opinion to explain its reasoning. Read together, *Dolan*, *supra* at n.1, and *Armbruster* empower an appellate court to review a weight of the evidence claim even in the absence of an obvious rationale from the trial court. In such circumstances, the Superior Court should "review the entire record and ultimately determine whether the trial court correctly decided the legal issues" and whether its "factual findings" are supported by "competent evidence." *Dolan*, *supra* at 176.

[6] During Ms. Franklin's testimony, one ASL translator "switched" with another. *See* N.T. Trial, 4/23/19, at 11. This occurrence is not relevant to our inquiry.

testimony, including her conflicting statements as to which floor of the Goodwill the assault took place, whether Appellant had "slapped" her during the assault, when she first informed Ms. Stotts of these events, and whether she knew Appellant prior to the assault. N.T. Trial, 4/23/19, at 14-18, 21-22. Furthermore, Appellant's arguments focus upon the questionnaire prepared by Ms. Stotts, which the victim answered in a manner indicating that her sexual encounter with Appellant was consensual.[7] *Id*. at 22-25.

These minor inconsistencies do not undermine the credibility of the core of the Commonwealth's case. Ms. Franklin positively identified Appellant and provided a cogent description of the assault and the events that followed it. Although she often asked for questions to be repeated or for further clarification, her testimony was generally responsive and indicative of full comprehension. She succinctly described Appellant following her into the Goodwill bathroom, restraining her there by the wrists, and forcing her to engage in non-consensual vaginal and anal intercourse. *Id*. at 4-8. As noted

---

[7] This questionnaire was introduced and used during the examination of witnesses at Appellant's trial, but it was incomplete due to several pages of questions being destroyed at some point. *See* N.T. Trial, 4/23/19, at 49-50. Additionally, the victim's former guardian, Charlene Franklin, testified that the victim's reading skills were very "limited" and expressed doubt as to the veracity of the document. *Id*. at 45 ("I believe there is some confusion when it comes to Linda's responses, because she did answer yes but did not fully understand the extent of what she was saying.").

above, she also testified that she told Appellant "no" throughout the assault.[8]

*Id*. at 8, 10-12. Ms. Franklin also testified that she was examined at Mercy Hospital, where a rape kit was taken. *Id*. at 12. The Commonwealth also adduced definitive evidence that Appellant's DNA matched the rape kit. *Id*. at 98, 116. Overall, we discern no basis to conclude that the trial court's failure to find that the verdict shocked its conscience was the product of an error of law, was manifestly unreasonable, or was "a result of partiality, prejudice, bias or ill-will." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal quotation marks omitted).

In Appellant's third claim, he asserts that his rights under the Confrontation Clause of the Sixth Amendment were violated at trial. *See*

---

[8] Appellant devotes a significant portion of his brief to arguing that Ms. Franklin's inability to define rape during cross-examination indicates that she cannot differentiate between consensual and non-consensual intercourse. This line of argument focuses upon the following exchange:

Q. Do you know the difference between rape and consensual sex?

A. Sexy is when someone touches you all over, and rape is also when someone touches you all over. Yes, it was rape.

Q. So are you unable to tell the difference between rape and consensual sex?

A. Rape is rape. I don't know.

N.T. Trial, 4/23/19, at 27. However, the victim's earlier testimony indicated that she repeatedly asked Appellant to "stop" during the assault. *Id*. at 8, 10-12. Regardless of whether the victim was able to produce a textbook definition of rape on demand, her testimony demonstrates that she understands the concept of consent and withheld it from Appellant.

Appellant's brief at 26-27 ("Every important area of cross-examination was completely foreclosed by the impossibility of receiving any meaningful response to any question involving her direct testimony . . . . Her inability to answer these questions artificially protected her from any reasonable attack or raise a reasonable doubt in the Commonwealth's case."). "[W]hether a defendant has been denied his right to confront a witness under the Confrontation Clause of the Sixth Amendment . . . is a question of law, for which our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Rivera***, 238 A.3d 482, 492 (Pa.Super. 2020).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST., Amend. VI. "'Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defense might wish.'" ***Commonwealth v. Segarra***, 228 A.3d 943, 956-57 (Pa.Super. 2020) (quoting ***Delaware v. Fensterer***, 474 U.S. 15, 20 (1985) (*per curiam*)). Writing for the majority in ***U.S. v. Owens***, 484 U.S. 554, 559 (1988), Justice Antonin Scalia opined:

> that opportunity is not denied when a witness testifies as to his current belief but is unable to recollect the reason for that belief. It is sufficient that the defendant has the opportunity to bring out such matters as the witness'[s] bias, his lack of care and attentiveness, his poor eyesight, and even . . . the very fact that he has a bad memory.

"Thus, 'the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these forgetfulness, confusion, or evasion infirmities through cross-examination.'" ***Segarra***, ***supra*** at 957 (quoting ***Fensterer***, ***supra*** at 20).

Both at trial and before this Court, Appellant has invoked this constitutional provision to argue that the victim was unavailable for cross-examination. ***See*** Appellant's brief at 25-39. We strongly disagree.

Contrary to Appellant's arguments, our review of the trial transcripts reveals that his counsel was able to conduct a thorough and effective cross-examination of the victim. ***See*** N.T. Trial, 4/23/19, at 14-30. Indeed, the trial court concluded that "Linda Franklin was available for cross-examination. Defense had a full and fair opportunity to cross-examine the witness." N.T. Trial, 4/24/19, at 133 (citing ***Commonwealth v. Mollett***, 5 A.3d 291, 308 (Pa.Super. 2010)). During this questioning, Appellant's counsel touched upon the inconsistencies in the victim's testimony that were described at length earlier in this writing, including her inability to define the term "rape" and her conflicting answers to Ms. Stotts's questionnaire. While Ms. Franklin was evasive and non-responsive at various junctures during this cross-examination, Appellant's counsel had ample opportunity to press for further responses and to draw the jury's attention to these points of contention.

Accordingly, the victim's responses on cross-examination were not so non-responsive that she was rendered unavailable under the Confrontation

Clause of the U.S. Constitution. At worst, Ms. Franklin's testimony on cross-examination evinced that she did not remember certain details surrounding the assault. However, "witnesses who testify as to lack of memory are not considered unavailable for cross-examination." **Mollett**, **supra** at 308 (citing **Owens**, **supra** at 559-60). Thus, Appellant's third claim necessarily fails.

Appellant's fourth claim asserts that his constitutional rights to a speedy trial were violated by the approximately eleven-year delay between the assault and the filing of charges by the Commonwealth. **See** Appellant's brief at 44-50. Appellant's arguments purport to implicate provisions of both the United States and Pennsylvania Constitutions. **See** U.S. CONST., Amend VI; PA. CONST., Art. I, § 9. In relevant part, our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. Pi Delta Psi, Inc.**, 211 A.3d 875, 886 (Pa.Super. 2019).

Appellant did not raise this issue in the trial court.[9] Thus, this claim is waived under Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").[10] **See Commonwealth**

---

[9] In his brief, Appellant baldly claims that he "asserted his [speedy trial] right almost immediately when counsel was assigned after the charges were filed in 2018." Appellant's brief at 49. However, there is no citation to any such preservation in the certified record as required by Pa.R.A.P. 2119(e). Our independent review of the record has revealed no such argument or claim.

[10] Appellant also failed to raise this issue in his Rule 1925(b) concise statement, which also results in waiver. **See also** Pa.R.A.P. 1925(b)(v)(vii).

***v. Strunk***, 953 A.2d 577, 579 (Pa.Super. 2008) ("Even issues of constitutional dimension cannot be raised for the first time on appeal.").

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/25/2021