J-A09039-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| 69-71 N. 2ND ST. LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHANCERY LANE PARTNERS | : | |
| | : | |
| Appellant | : | No. 721 EDA 2021 |

Appeal from the Judgment Entered March 24, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 180802658

BEFORE:  NICHOLS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED MAY 24, 2022**

Chancery Lane Partners (Chancery Lane) appeals from the judgment entered in the Court of Common Pleas of Philadelphia County (trial court) in favor of 69-71 N. 2nd St. LLC (N. 2nd St. LLC) on their claims for ejectment and trespass and against it on its counterclaims for adverse possession and quiet title.  Because we find that the trial court abused its discretion by finding the Chancery Lane witness not credible based on improper factors, we reverse and remand the case for a new trial.

---

[*] Retired Senior Judge assigned to the Superior Court.

**I.**

**A.**

This is a property dispute between adjacent landowners over a four-foot-wide alley between their properties.  In November 1996, Chancery Lane purchased the Chancery Lane Apartments located at 61-67 North 2nd Street and 130-134 Arch Street, which is in the Old City area of Philadelphia.  At some unknown time, a stone entryway and gate for the apartments was built leading to the Arch Street sidewalk.  As shown in this 2018 picture, the entryway and gate are flanked on both sides by multi-level brick walls that have iron fencing on top.



N. 2nd St. LLC's Exhibit 20 (RR. 1680a).

The dispute centers on the approximately four-foot-high brick wall on the right-hand side of the picture with the planter in front. In August 2018, N. 2nd St. LLC acquired the building next to Chancery Lane Apartments at 69-71 North 2nd Street. N. 2nd St. LLC's deed granted it express easement rights to a four-foot-wide alley behind its building. Chancery Lane's deed also describes the four-foot-wide alley and grants it express easement rights. As shown above, though, N. 2nd St. LLC cannot access or otherwise use the alley because the brick wall is blocking the alley. As the parties later stipulated at trial, Chancery Lane has exclusive possession of the alley because of the wall.

Soon after buying its property, N. 2nd St. LLC demanded that Chancery Lane remove the wall. When Chancery Lane refused, N. 2nd St. LLC sued for ejectment and trespass. Chancery Lane answered and counterclaimed for adverse possession and quiet title. While not claiming to know when the wall was erected, Chancery Lane asserted that the brick wall blocking the alley has been there since it purchased Chancery Lane Apartments in November 1996, thus satisfying the 21-year statutory period for adverse possession.[1]

---

[1]

> Adverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law. Accordingly, the grant of this extraordinary privilege should be based upon clear evidence. One who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years. Each of these elements must exist; otherwise, the possession will not confer title.

*(Footnote Continued Next Page)*

In October 2020, the trial court held a two-day non-jury trial via Zoom. At trial, Chancery Lane relied on its corporate designee, Louise Giordano (Giordano), who is senior vice president of management for PMC Property Group (PMC), the property group that manages Chancery Lane Apartments. She testified that she has worked for PMC since 1994 and remembered when Chancery Lane purchased Chancery Lane Apartments. While she did know when the wall was built, Giordano stated that she was "positive" that the gate, wall and planter were there when she first visited Chancery Lane Apartments in November 1996. She also confirmed that the multi-tiered brick wall appeared then as it does today, with the iron fencing on top.

For the most part, N. 2nd St. LLC did little to impeach Giordano's credibility or her memory. Nor did N. 2nd St. LLC admit any evidence contradicting that the brick wall has existed since at least November 1996. Instead, N. 2nd St. LLC focused on showing that Giordano's recollection was just that—only a recollection. To this end, N. 2nd St. LLC stressed that there was no documentary evidence corroborating Giordano's memory. For instance,

> Q. …[Chancery Lane] has not attempted to contact anyone from the City of Philadelphia about the approval or construction of the brick wall, correct?

*Pennsylvania Services Corp. v. Texas E. Transmission, LP*, 98 A.3d 624, 634 (Pa. Super. 2014) (internal citations, quotations and brackets omitted).

A.    Correct.

Q.    You were unable to locate any building permits that authorized the construction of the brick wall, correct?

A.    Correct.

Q.    You were unable to locate any building plans that identified the makeup or how the brick wall was to be constructed, correct?

A.    Well, the brick wall was there when we purchased the building.

Q.    My question was, were you able to locate any building plans for the brick wall?

A.    No.

Q.    So the sum and substance of your testimony of the brick wall is that you personally remember seeing the brick wall from 1996, correct?

A.    Correct.

Q.    There is no one else who's able to come here in court to corroborate that, correct?

A.    Well, I'm sure the owner would be able to.

Q.    And there is no document that you are aware of that can confirm or corroborate that the brick wall existed in 1996, correct?

A.    Yes.

N.T., 10/21/20, at 57-59.

There was, however, one piece of documentary evidence admitted that possibly corroborated Giordano:  an August 1996 survey of Chancery Lane Apartments.  The survey was prepared by an architectural firm in anticipation of Chancery Lane's purchase of the property.  The survey contains four

features that are relevant. First, the survey identifies the four-foot-wide alley and states that "69 & 71 have right and use of 4' alley," with an arrow pointing to the alley. Second, the survey identifies the planter on the sidewalk. Third, the survey identifies a 12" wall with an arrow pointing to the space between the planter and the gate to Chancery Lane Apartments. Fourth, the survey identifies the gate to Chancery Lane Apartments.



N. 2nd St. LLC's Exhibit 10 (RR 1658a).

Chancery Lane's position was that the survey showed that the wall, planter and gate existed in August 1996 in the same location and condition as they do today. Chancery Lane relied on Giordano to explain what the survey showed.

> Q. Take a look back at P-10, please. Traversing from west to east, you see the alley and then you see an area, and then you see reference to another 4 story brick structure. Do you see that?
>
> A. Yes.

Q.      Okay.      Is that structure part of the Chancery Lane Apartments?

A.      Yes.

Q.      Okay.  And if you go to the northwest corner of that building. Are you with me?

A.      Yes.

Q.      And then you see there is reference to a wall.  Do you see the wall on the survey that runs parallel to Arch Street?

A.      Yes.

Q.      Does that wall run all the way from the northwest corner of the building I just identified all the way to [P]laintiff's building?

A.      No.  Well, it has the gate, the entrance gate separates it.

Q.      Okay.  So that whole area is either wall or entrance gate?

A.      Correct.

Q.      Okay.  Is that gate secured?

A.      It is.

Q.      And does that wall with the gate enclose the Chancery Lane courtyard?

A.      Yes.

Q.      And has that been the case since November of 1996?

A.      Yes.

N.T., 10/21/20, at 79-81.

It was N. 2nd St. LLC's position that the survey was inconclusive as to the existence of the wall.  Through its questioning of Giordano, N. 2nd St. LLC

emphasized that the survey lacked any information about the brick wall other than it being 12 inches.

> Q. And you will agree with me that's the only reference anywhere on this plan to the physical condition of the wall on the perimeter of the courtyard; isn't that correct?
>
> A. Yes.
>
> Q. And nowhere on the [survey] is there any reference to a multi-tiered height; isn't that correct?
>
> A. That's -- I don't think that would necessarily show on a survey.
>
> Q. And there is no reference to an iron fence on the plan; isn't that correct?
>
> A. That's correct.

*Id*. at 50.

N. 2nd St. LLC likewise posited that the notation of the wall being 12 inches referred to its height, not its width. When Giordano testified to the opposite, N. 2nd St. LLC confirmed on cross-examination that she had not confirmed her opinion with the makers of the survey.

N. 2nd St. LLC also presented Mark Trimbath (Trimbath), an expert in architecture, land development and building plan design. He concluded that N. 2nd St. LLC would need access to the alley depending on how it planned to develop its property. In so concluding, Trimbath reviewed the 1996 survey. Besides noting that the survey did not identify the wall's multiple levels or iron fencing, Trimbath believed that the survey's identification of a 12-inch wall referred to its height because surveys or plans are usually drawn to scale.

Q.    And why would you assume that it refers to the height?

A.    Because typically when you are looking at something in a plan, you use the scale of the drawing, or demarked dimension stringers, or the length and the width.

Q.    And when you say, "scale," does that mean that – can you explain it to the Court what you mean by "scale map" or "scale plan?"

A.    Yes.  Essentially, plans are drawn when they are called to – called as a scale plan, they are drawn to some sense of dimension that you can measure off of the plan.

*Id*. at 153.

**B.**

The trial court decided in favor of N. 2nd St. LLC on its claims for ejectment and trespass but against Chancery Lane on its counterclaims for adverse possession and quiet title.  In its initial decision, the trial court denied Chancery Lane's adverse possession claim because it found that its use of the alley was permissive and not adverse to N. 2nd St. LLC or its predecessor ownership interests, as well as finding that there was no demonstrative evidence of when the wall was erected.  The trial court explained:

At trial, it was established that the brick wall maintained by Chancery Lane obstructs N. 2nd St. LLC's access to and use of the Subject Alley.  There have been no improvements made to the Subject Alley, and the wall and gate that were constructed at some unknown point in time, simply extend the outside space of Chancery Lane [Apartments] and ingress and egress for its residents.  This would seem to be a permissive use as opposed to one which is adverse.  *See Estojak* [*v. Mazsa*], 562 A.2d 271, 275 (Pa. 1989).  Chancery Lane provided no demonstrative evidence to establish when the brick wall was erected. Additionally, the use of the Subject Alley was not inconsistent with the use as permitted by the easement, as such, Chancery Lane

- 9 -

failed to establish exclusive, hostile possession of the Subject Alley for the statutory period by credible, clear and definitive proof. *See Johnson* [*v. Tele-Media Co. of McKean County*], 90 A.3d [736, 740-41 (Pa. Super. 2014].

Findings of Fact and Conclusions of Law (Findings and Conclusions), 12/8/20, at 4. The trial court ordered that Chancery Lane remove "the brick wall and gate or any other structures that restrict N. 2nd St. LLC's access to and shared possession of the Subject Alley." *Id*. at 5.

Chancery Lane filed a post-trial motion to vacate or modify the trial court's findings for N. 2nd St. LLC.[2] Among other things, Chancery Lane disputed that it failed to establish exclusivity or hostility for adverse possession, noting that the parties stipulated that the brick wall "prevents N. 2nd St. LLC from accessing or otherwise using the Subject Alley" and "gives Chancery Lane exclusive possession of the Subject Alley." Post-Trial Motion, 12/18/20, at ¶¶ 29-30. The trial court, however, did not rule on Chancery Lane's post-trial motion; instead, on March 1, 2021, the trial court issued an "alternative order" modifying its prior order to clarify that Chancery Lane need not "remove the gate or any portion of the brick wall that is not immediately adjacent to the Subject Alley."

_____

[2] Chancery Lane also moved to stay enforcement, which the trial court granted.

After Chancery Lane filed this appeal,[3] the trial court authored its Pa.R.A.P. 1925(a) opinion. In that opinion, the trial court changed its rationale for it finding that Chancery Lane failed to make out its adverse possession claim. Instead of finding the use was permissive, it found that Chancery Lane did not make out its adverse possession claim because Giordano's testimony was incredible because "[t]here was no documentation to substantiate her testimony, nor were there additional witnesses to corroborate her memory." *See* Pa.R.A.P. 1925(a) Opinion (Rule 1925 Opinion), 10/12/21, at 8.

**II.**

On appeal, while Chancery Lane raises seven overlapping issues, the central issue in this case is whether the trial court abused its discretion by finding Giordano's testimony incredible. In addressing that issue, we begin with our standard of review:

> Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

---

[3] After the trial court entered its order, N. 2nd St. LLC filed a praecipe for judgment on March 24, 2021. The "alternative order," however, neither granted nor denied Chancery Lane's post-trial motion. As a result, after Chancery Lane filed his notice of appeal on March 26, 2021, this Court issued a rule to show cause directing Chancery Lane to praecipe the trial court to enter judgment. Chancery Lane responded on July 13, 2021, enclosing the trial court's docket showing that judgment was entered on July 1, 2021. This Court discharged the rule to show cause order on July 15, 2021.

- 11 -

Moreover, [t]he [trial] court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, **unless it appears that the court abused its discretion or** that the court's findings lack evidentiary support **or that the court capriciously disbelieved the evidence**.

***Century Indem. Co. v. OneBeacon Ins. Co.***, 173 A.3d 784 (Pa. Super. 2017) (citations omitted) (emphasis added).

With that standard in mind, the issue then becomes whether the trial court abused its discretion by capriciously disbelieving Giordano's testimony that the wall blocked alley access to the street for 21 years and finding her testimony not credible.

**A.**

Chancery Lane contends that the trial court abused its discretion in finding Giordano not credible because when it made its initial decision, her testimony was assumed credible but deemed insufficient to establish adverse possession because Chancery Lane's use of the alley was permissive. Moreover, it points out that the trial court made no mention of finding her testimony incredible when it issued its March 1, 2021 "alternative order." Chancery Lane further points out that the trial court only found Giordano's testimony incredible when it finally issued its 1925(a) opinion. Chancery Lane speculates the trial court only made its after-the-fact credibility determination to avoid reversal on appeal.

Chancery Lane stresses that Giordano's recollection went unchallenged at trial, as N. 2nd St. LLC presented no witness, photograph, survey or any

other item to disprove that the brick wall has not existed since at least November 1996. To that end, Chancery Lane minimizes N. 2nd St. LLC's cross-examination of Giordano, noting that N. 2nd St. LLC's questioning merely showed that she did not know when the wall was constructed, which, in any event, is irrelevant.

Chancery Lane further asserts that the trial court compounded its credibility error by incorrectly finding that Giordano's testimony was the only evidence of the wall's existence in November 1996. To the contrary, Chancery Lane argues, the August 1996 survey depicts the wall, planter and gate in the same location where they all are today, which is what Giordano testified to when she was shown the survey. Chancery Lane acknowledges that N. 2nd St. LLC disputed whether the wall depicted in the 1996 survey is different from the wall as it stands today. Chancery Lane, however, dismisses this argument as rank speculation because N. 2nd St. LLC presented no testimony or any other evidence to disprove that the wall in the 1996 survey is not the same one that blocks the alley today.

N. 2nd St. LLC counters that Chancery Lane is merely seeking to have this Court reweigh the evidence and credit the testimony of its sole fact witness and ignore any countervailing evidence. As it did at trial, N. 2nd St. LLC stresses that Chancery Lane, in seeking relief under adverse possession, had the burden of presenting credible, clear and definitive proof. With this elevated burden in mind, N. 2nd St. LLC reiterates the trial court's central

finding that Chancery Lane produced no demonstrative evidence to establish when the brick wall was erected. On this point, N. 2nd St. LLC asserts that Chancery Lane is asking this Court to blindly accept its favorable interpretation of the 1996 survey and ignore the countervailing evidence that the survey did not depict the wall as it now stands.

**B.**

Ordinarily, "[i]t is well established that the credibility of witnesses is an issue to be determined by the trier of fact. On appeal this Court will not revisit the trial court's determinations ... regarding the credibility of the parties. Thus, [an] argument, which would require this Court to revisit and essentially reverse the [trial court] on his credibility determinations, provides no grounds for relief." ***Woods v. Cicierski****,* 937 A.2d 1103, 1105 (Pa. Super. 2007) (internal citations omitted). The trial court is "free to reject even uncontradicted evidence that it finds lacking in credibility." ***Boro Construction, Inc. v. Ridley School District****,* 992 A.2d 208, 218 n.16 (Pa. Cmwlth. 2010) (citing ***D'Emilio v. Board of Supervisors of the Township of Bensalem****,* 628 A.2d 1230, 1233 (Pa. Cmwlth. 1993)).

While the trial court was free to reject Giordano's uncontradicted testimony as not credible, its credibility determination must still be based on proper factors. It could have found her not credible simply because of her demeanor or internal inconsistencies in her testimony and the like, but in this

case, the trial court abused its discretion in making its credibility determinations based on two misperceptions.

First, the trial court found that her testimony was not credible because Chancery Lane failed to present corroborating evidence—whether that be documentary or testimonial. **See** Rule 1925 Opinion at 8 ("There was no documentation to substantiate [Giordano's] testimony, nor were there additional witnesses presented to corroborate her memory." Rule 1925 Opinion at 8. There is no requirement, however, that there be corroborating evidence to make a witness's testimony credible in an adverse possession case, even with its elevated clear and convincing standard.

Second, notwithstanding that there did not have to be corroborating evidence to make her testimony credible, there was such evidence. The parties admitted the August 1996 survey at trial. As shown above, the survey depicts, at the very least, a wall and planter in front of the alley leading to Arch Street. While the parties differed over what the survey showed, the fact remains that there was documentary evidence that arguably supported Giordano's testimony that the same brick wall that blocks the alley today has been there since at least November 1996.

Rather than confront the survey and resolve the parties' factual dispute over what it shows, the trial court chose to ignore it and instead mistakenly find that Chancery Lane's adverse possession claim was dependent solely on eyewitness testimony. While our standard of review of a non-jury trial is

deferential to the trial court, as is our standard for reviewing its credibility determinations, the trial court's explanation for its credibility determination of Giordano is premised on a mischaracterization of the trial evidence. Based on these two misconceptions in making its credibility determinations, the trial court abused its discretion in capaciously disbelieving Giordano's testimony.

**C.**

Under these circumstances, the appropriate relief would be to remand for the trial court to reconsider the credibility of Giordano's testimony and make new credibility findings as well as resolving the outstanding factual dispute concerning the August 1996 survey. Here, however, the original trial judge is no longer available. Our Supreme Court recently held that where the original trial judge is "unavailable to provide a supplemental opinion," we are permitted to review both "legal issues" and "factual findings" in the first instance. *See Dolan v. Hurd Millwork Company, Inc.*, 195 A.3d 169, 176 (Pa. 2018). However, that remedy is not available here because, while we conclude that the trial court abused its discretion in capriciously disbelieving Giordano by ignoring documentary evidence, it does not necessarily follow that we credit her testimony. We are, therefore, constrained to conclude a new trial is required to allow a new presiding judge to hear testimony and render necessary credibility determinations, factual findings and conclusions of law.

> We recognize that to remand now means not merely a remand for a fuller opinion, but rather to start the proceedings all over again.

> This is necessitated by the fact that the presiding judge is no longer on the bench.  We find it extremely unfortunate that the proceedings must be renewed in the lower court, but we see no acceptable alternative.  We cannot review the record of this case without ... a determination of witness credibility.

***Delbaugh v. Delbaugh***, 487 A.2d 417, 419 (Pa. Super. 1985).

Accordingly, we reverse the trial court's judgment and remand the matter for a new trial on the merits.

Judgment reversed.  Case remanded for new trial.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2022

- 17 -