J-A29022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSIE JAMES HOLLEY | : | |
| | : | |
| Appellant | : | No. 36 WDA 2021 |

Appeal from the PCRA Order Entered December 11, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0014168-2014

BEFORE:   BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED: MARCH 9, 2022**

Jessie James Holley appeals from the December 11, 2020 order denying his petition for relief pursuant to the Post-Conviction Relief Act ("PCRA"), wherein he argued that both his trial counsel and appellate counsel were ineffective in failing sufficiently to advance claims for relief implicating the double jeopardy clauses of the United States and Pennsylvania Constitutions. After careful review, we vacate the order and remand with instructions.

This case concerns Appellant's assault of an eleven-year-old child ("Victim") on the evening of September 27, 2014, in McKeesport, Pennsylvania.  This Court has summarized the facts of the case, as follows:

> On September 27, 2014, Appellant's girlfriend was scheduled to babysit Victim.  She, however, sent Appellant to watch Victim. While Victim was playing video games, Appellant touched her legs, breasts, and vagina while kissing her neck.  Victim retreated to a

_____

[*] Retired Senior Judge assigned to the Superior Court.

bedroom. Appellant convinced her to open the door and then entered the bedroom. He touched her vagina and then penetrated her vagina with his fingers. Appellant took Victim's clothes off, performed oral sex on her, and raped her. The next morning, Victim reported the assault.

***Commonwealth v. Holley***, 200 A.3d 564 (Pa.Super. 2018) ("***Holley I***") (unpublished memorandum at 1). Appellant was arrested and charged with rape of a child, involuntary deviate sexual intercourse ("IDSI") with a child, aggravated indecent assault of a child, unlawful contact with a minor, aggravated indecent assault, unlawful restraint, indecent assault—person less than thirteen years of age, corruption of minors, and indecent exposure. Appellant was represented by an attorney of the Allegheny County Public Defender's Office ("trial counsel").[1] His first trial took place from September 24 through September 30, 2015, which resulted in a deadlocked jury. The trial court declared a mistrial. ***See*** N.T. Trial I, 9/30/15, at 207.

Appellant's retrial began on December 6, 2016. In his opening statement at that proceeding, trial counsel averred Appellant's DNA had not

---

[1] The record reflects that Appellant was dissatisfied with trial counsel's representation prior to his first trial and filed a *pro se* petition requesting replacement counsel. ***See*** *Pro Se* Motion for Ineffective Counsel, 4/20/15, at ¶¶ A-D. Thereafter, trial counsel filed a petition to withdraw, which described "[a]n irreconcilable breakdown in the attorney-client relationship." Motion to Withdraw as Counsel, 10/25/16, at ¶ 7. Trial counsel averred he and Appellant had "stark differences of opinion over trial strategy and evidentiary issues" and that Appellant believed that trial counsel was "not sharing information and evidence" or pursuing Appellant's defense with appropriate diligence. ***Id***. at ¶¶ 4-5. Overall, trial counsel averred that he could not continue to represent Appellant in "good conscience." ***Id***. at ¶ 8. Neither the docket nor the certified record reflects that the trial court took any action in response to the submissions. Trial counsel represented Appellant through all four of his trials.

been found on the bed where the assault occurred, which was consistent with the evidence available to the defense up to that point. *See* N.T. Trial II, 12/6/16, at 23. Later that day, however, the Commonwealth disclosed that it had overlooked a copy of a DNA test result establishing the presence of Appellant's DNA on the bed sheets. Although the Commonwealth had not provided a copy of this result to the defense, it nonetheless intended to introduce it at trial. *Id*. at 102-04. Trial counsel argued the admission of this evidence would completely undercut his claims to the contrary in his opening. *Id*. at 104-06. Appellant requested the test result be excluded from admission at trial, which the trial court cursorily denied. *Id*. at 107 ("I can't exclude it."). Instead, the trial court declared a second mistrial.

Appellant's third trial commenced on March 13, 2017. Shortly after proceedings began, another discovery discrepancy attributable to the Commonwealth came to light. The only record of these events consists of the following summary provided by the trial court at that trial:

> THE COURT: It has been brought to my attention that the McKeesport police just today produced [a] note involved that the victim was alleged – that the victim wrote on the night of the alleged crime as well as a rather extensive forensic interview of the victim. There may be some other articles of evidence available that have not been produced to the District Attorney's Office.
>
> The district attorney has – will immediately turn over this evidence to defense counsel. In an effort to not try this case for the fourth time[,] the offer was made by the Commonwealth to give the defendant a period of time served, to plead to the indecent assault as well as the sex offender probation. [Trial counsel] has discussed this with [Appellant,] who has declined the offer.

- 3 -

N.T. Trial III, 3/13/17, at 87. Appellant requested outright dismissal of the charges or, in the alternative, the declaration of a mistrial.[2] The trial court immediately denied the request for dismissal and declared a third mistrial.

Appellant's fourth trial convened on May 3, 2017. The transcripts reveal that Appellant filed a *pro se* motion to dismiss all charges on double jeopardy grounds, which trial counsel adopted and presented to the trial court prior to the beginning of the trial.[3] *See* N.T. Trial IV, 5/3/17, at 2-4. However, trial counsel declined to pursue a formal hearing or adduce any testimony in support of the motion. *Id*. Thus, the trial court denied the motion and trial commenced. On May 9, 2017, a jury found Appellant guilty of all charges. The trial court sentenced Appellant to fifteen to thirty years of incarceration for rape of a child, fifteen to thirty years of incarceration for IDSI of a child, and five to ten years of incarceration for unlawful contact with a minor. The sentences were set to run consecutively, resulting in an aggregate term of incarceration of thirty-five to seventy years. No further penalty was imposed on the remaining convictions.[4]

_____

[2] Although trial counsel requested dismissal of the charges, he did not articulate a specific ground for relief, *i.e.*, double jeopardy.

[3] Appellant's *pro se* motion to dismiss is not present in the certified record. The absence of this filing from both the docket and the record of the trial court appears to be a violation of Pa.R.Crim.P. 576(A)(4). As discussed *infra*, this document is also relevant to Appellant's claims for relief under the PCRA.

[4] Appellant was also subjected to lifetime registration pursuant to Subchapter H of the Pennsylvania Sentencing Code. *See* 42 Pa.C.S. §§ 9799.10-9799.42.

Appellant filed a notice of appeal and was represented by a different attorney from the Public Defender's Office ("appellate counsel"). In pertinent part, appellate counsel raised two issues on Appellant's behalf, namely: (1) a challenge to the weight of the Commonwealth's evidence; and (2) a claim that the trial court imposed an unnecessarily harsh sentence without adequately stating its reasons for doing so. On October 15, 2018, this Court affirmed Appellant's judgment of sentence. *See Holley I*, *supra* at 5. Appellant did not seek allowance of appeal in the Pennsylvania Supreme Court.

On January 9, 2019, Appellant filed a timely *pro se* PCRA petition averring that both trial counsel and appellate counsel were ineffective. PCRA counsel was appointed. Prior to the filing of an amended petition, Appellant elected to proceed *pro se* after a hearing was held pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998). Thereafter, the PCRA court dismissed Appellant's petition due to his failure to file an amended pleading. *See* Order, 7/8/19. On appeal, this Court vacated the order due to the PCRA court's failure to issue notice of its intent to dismiss without a hearing pursuant to Pa.R.Crim.P. 907. *See Commonwealth v. Holley*, 227 A.3d 398 (Pa.Super. 2020) ("*Holley II*") (non-precedential decision at 2).

On remand, replacement PCRA counsel was appointed and Appellant was granted leave to file an amended petition. Therein, he averred trial counsel was ineffective for neither seeking a hearing in support of the motion to dismiss or objecting to the trial court's alleged failure to hold a hearing or

issue "a statement of findings of fact and conclusions of law" as contemplated by Pa.R.Crim.P. 587(B) . Amended PCRA Petition, 9/8/20, at ¶ 33. By failing to press for the creation of a factual record, Appellant argued that trial counsel allowed the Commonwealth to avoid explaining its "carelessness and apparent deliberate indifference to the possibility of a mistrial or reversal on appeal in failing to disclose evidence that it knew, or should have known existed, and was either in its possession, or the possession of the police prior to the commencement of trial[.]" *Id*. at ¶ 31. Separately, Appellant asserted appellate counsel was ineffective for neglecting to raise the issue of double jeopardy during Appellant's direct appeal. *Id*. at ¶ 25. The Commonwealth submitted an answer as directed by the PCRA court.

On November 18, 2020, the PCRA court filed notice of its intent to dismiss Appellant's amended petition without a hearing based upon its conclusion that the claims had no merit. The PCRA court provided Appellant twenty days in which to respond. After receiving no counseled response from Appellant within this time period, the PCRA court dismissed the amended petition.[5] *See* Order, 12/11/20. Appellant timely appealed. The PCRA court directed Appellant to file a concise statement pursuant to Pa.R.A.P. 1925(b) and Appellant timely complied. Thereafter, the trial court filed a statement in

---

[5] Contemporaneously, Appellant filed a number of untimely *pro se* responses to the PCRA court's Rule 907 notice, which raised concerns that his current attorney would not appeal, or otherwise respond, to the PCRA court's denial of his petition. PCRA counsel filed a timely appeal on Appellant's behalf.

lieu of an opinion pursuant to Rule 1925(a) averring that it was unable to provide a rationale with respect to its dismissal of Appellant's petition because it did not serve as the trial court in the earlier four trials.

Appellant has raised the following issue for our review:

Did the lower court abuse its discretion in denying the PCRA petition, as amended, without a hearing, insofar as [Appellant] established the merits of the claim that counsel was ineffective for failing to move to compel the lower court to comply with Pa.R.Crim.P. 587(B) and for failing to appeal the court's denial of the motion to dismiss on double jeopardy grounds?

Appellant's brief at 4. In reviewing the denial of PCRA relief, "we examine whether the PCRA court's determinations are supported by the record and are free of legal error." *Commonwealth v. Watkins*, 108 A.3d 692, 701 (Pa. 2014). While "[t]he PCRA court's credibility determinations, when supported by the record, are binding on this Court," this Court applies a *de novo* standard of review with respect to the PCRA court's legal conclusions. *Id*.

Appellant seeks an evidentiary hearing in the PCRA court with respect to his claims of ineffectiveness. *See* Appellant's brief at 9 ("The lower court abused its discretion in finding no merit to the claims raised in the PCRA petition, and denying the petition without a hearing, where [Appellant] established the merits of his claim that counsel was ineffective[.]"). It is well-established that "[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary."

***Commonwealth v. Jones***, 942 A.2d 903, 906 (Pa.Super. 2008) (cleaned up). This issue is governed by Rule 907(1), which provides as follows:

> [T]he judge shall promptly review the petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed dismissal within 20 days of the date of the notice. The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue.

Pa.R.Crim.P. 907(1). Thus, Rule 907(1) "permits a trial court to dismiss a PCRA petition without a hearing **only** if the judge determines that no genuine issues of material fact exist on the record and the appellant is not entitled to post-conviction relief." ***Commonwealth v. Diaz***, 913 A.2d 871, 875 (Pa.Super. 2006) (emphasis added).

Ordinarily, we would review the factual findings rendered by the PCRA court to conduct our review of this issue. However, the PCRA court did not undertake any fact finding or credibility assessments, explaining as follows:

> As this [c]ourt did not hear the underlying cases, nor bear witness to the Commonwealth and their explanations for the continued discovery of new evidence, this [c]ourt is not in a position to find that the Commonwealth did or did not act recklessly or intentionally to deprive [Appellant] of a fair trial. Notably, [the trial court], who presided over the four jury trials did not appear to believe the Commonwealth's actions rose to the necessary level given that she denied [Appellant's] requests for dismissal on the grounds of double jeopardy.

- 8 -

> Accordingly, because this [c]ourt was not present at the prior jury trials to assess the Commonwealth's actions, this Court cannot make a determination as to the intent behind them. As this [c]ourt is unable to determine if the underlying claims of double jeopardy had merit, it is not in a proper position to determine if [Appellant's] ineffective assistance of counsel claims prevail.
>
> Thus, as this [c]ourt did not hear the case and cannot adequately address the errors alleged on appeal, this [c]ourt asks the Superior Court of Pennsylvania to accept this [statement in lieu of an opinion].

PCRA Court Statement, 5/24/21, at 2-3.

Pa.R.A.P. 1925(a)(1) contemplates situations such as this and provides that where "the case appealed involves a ruling issued by a judge who was not the judge entering the order giving rise to the notice of appeal, the judge entering the order giving rise to the notice of appeal may request that the judge who made the earlier ruling provide an opinion[.]" The trial judge who presided over all four of Appellant's trials would presumably be in a position to opine on the merits of the underlying double jeopardy claim. However, that jurist departed the bench prior to these appellate proceedings. The second judge who oversaw the first round of PCRA proceedings also departed the bench prior to the instant appeal. Accordingly, no jurist previously attached to this case is available to author a responsive opinion under Rule 1925(a)(1).

Our case law generally provides that where an original jurist is "unavailable to provide a supplemental opinion," we are permitted to review both the "legal issues" and "factual findings" implicated by an appeal without the benefit of a responsive Rule 1925(a) opinion. *See Commonwealth v.*

*Carr*, 262 A.3d 561, 566 (Pa.Super. 2021) (citing *Dolan v. Hurd Millwork Co., Inc.*, 195 A.3d 169, 176 (Pa. 2018)). However, this approach assumes that "no purpose would be served by remanding [the] matter [because] the record already establishes that the preparation of an adequate Rule 1925(a) opinion is not possible." *Id*. We cannot reach such a conclusion in this case.

Moreover, our review of the certified record reveals several lingering issues of material fact with respect to Appellant's allegations of ineffectiveness. Under the PCRA, "a petitioner is eligible for relief only where his counsel's act or omission so undermined the truth-determining process such that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Bradley*, 261 A.3d 381, 391 (Pa. 2021). However, "counsel is presumed to have been effective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness." *Commonwealth v. Reid*, 259 A.3d 395, 405 (Pa 2021). To satisfy this burden, a PCRA petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, "that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different." *Id*. The failure to satisfy "any prong of this test" is fatal to the claim. *Id*.

The arguable merit and prejudice prongs of Appellant's ineffectiveness claim both implicate principles of double jeopardy in the United States and Pennsylvania Constitutions. *See* U.S. CONST., Amend. V (stating no person shall "be subject for the same offence to be twice put in jeopardy of life or limb"); PA. CONST., Art. 1, § 10 ("No person shall, for the same offense, be twice put in jeopardy of life or limb[.]").  Our Supreme Court has articulated the scope of the protections under the Fifth Amendment, as follows:

> The Double Jeopardy Clause protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense.  Among its purposes are to preserve the finality and integrity of judgments and to deny the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.
>
> Insofar as individual rights are concerned, the Clause protects a defendant's interest in having his fate decided by his first jury.  It is grounded on the concept that no person should be harassed by successive prosecutions for a single wrongful act . . . .
>
> Still, federal jurisprudence has clarified that the Double Jeopardy Clause does not require the government to vindicate its interest in law enforcement through a single proceeding for each offense.  Thus, retrial is generally allowed where the first proceeding ends in a mistrial[.]

*Commonwealth v. Johnson*, 231 A.3d 807, 819 (Pa. 2020) ("*Johnson*") (collecting cases; cleaned up).  Accordingly, "the Fifth Amendment immunizes the defendant from retrial only where the government's actions were intended to 'goad' the defendant into moving for a mistrial." *Id*. at 820 (cleaned up).

Prior to September 1992, the double jeopardy protections afforded by the Pennsylvania Constitution had been viewed as "coextensive with those of

the Fifth Amendment in light of identical textual and policy considerations."

*Id*. at 819. In *Commonwealth v. Smith*, 615 A.2d 321 (Pa. 1992), however,

our Supreme Court found that the Pennsylvania Constitution "prohibits retrial

of a defendant not only when prosecutorial misconduct is intended to provoke

the defendant into moving for a mistrial, but also when the conduct of the

prosecutor is intentionally undertaken to the prejudice the defendant to the

point of the denial of a fair trial." *Smith*, *supra* at 325. Specifically, this

legal standard encompasses "all serious prosecutorial misconduct undertaken

with the purpose of denying the defendant his constitutional right to a fair

trial." *Johnson*, *supra* at 822. At the time of the proceedings in this case,

double jeopardy attached "only to those mistrials which have been

**intentionally** caused by prosecutorial misconduct."[6] *Id*. at 821 (cleaned up;

---

[6] The High Court again charted new territory in *Commonwealth v. Johnson*, 231 A.3d 807, 824 (Pa. 2020) by holding that, under the Pennsylvania Constitution, "prosecutorial overreaching sufficient to invoke double jeopardy protections includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken **recklessly**, that is, with a conscious disregard for a substantial risk that such will be the result." *Johnson*, *supra* at 826 (emphasis added). This holding was issued several years after the trial proceedings in Appellant's case had concluded. To the extent that Appellant relies upon *Johnson* for relief, we note that "counsel cannot be deemed ineffective for failing to predict changes and/or developments in the law." *Commonwealth v. Gribble*, 863 A.2d 455, 473 (Pa. 2004). Accordingly, we cannot measure counsel's effectiveness against the gravamen of the holding in *Johnson*. Nonetheless, the following passage from our Supreme Court seems relevant in light of the circumstances presented here:

> [A] defendant should not have to choose between (a) having his
> fate decided by his first jury notwithstanding that the proceedings

*(Footnote Continued Next Page)*

emphasis added). However, "not all intentional misconduct is sufficiently egregious . . . to invoke the jeopardy bar." *Id*. at 822. Rather, "the misconduct must be so egregious to constitute overreaching" and "the sanction of dismissal of criminal charges should be utilized only in the most blatant of cases." *Id*. (cleaned up).

Under both the United States and Pennsylvania Constitutions, the actions and intent of the Commonwealth are the determinative points of inquiry with respect to the merits of a motion to dismiss upon double jeopardy claims.[7] Here, it is not disputed that serial mistrials were declared in the

_____

are infected by serious errors, or (b) enduring a new proceeding from the beginning with the expense, anxiety, and disruption it entails, and with the government in a better position to marshal evidence and anticipate the defense strategy. These factors, in turn, stem from double jeopardy's fundamental policy objective that defendants should not be put to multiple trials for the same offense – particularly in view of the government's power and resources which would otherwise enable it to subject defendants to serial proceedings . . . . [T]he accused should not be put to a "Hobson's choice" between giving up his first jury and continuing a trial tainted by prejudicial judicial or prosecutorial error[.]

[When] the government engages in improper actions sufficiently damaging to undercut the fairness of a trial, it matters little to the accused whether such course of conduct was undertaken with an express purpose to have that effect or with a less culpable mental state. Either way, the conduct imposes upon the defendant the very "Hobson's choice" which double jeopardy seeks to prevent.

*Johnson*, *supra* at 825-26 (cleaned up).

[7] Given the differentiation between the double jeopardy protections afforded by the United States and Pennsylvania Constitutions, an initial issue of
*(Footnote Continued Next Page)*

above-captioned case and that the last two of those mistrials were attributable to the Commonwealth's failure to disclose various evidence to the defense ahead of trial.  Unfortunately, as the PCRA court recognizes in its Rule 1925(a) statement, there is a dearth of information in the certified record that bespeaks whether the actions of the Commonwealth were intentional and rose to the level of egregiousness necessary to bar retrial.

The lack of a definitive factual record concerning these critical issues lends further credence to Appellant's allegations that trial counsel failed adequately to develop the factual record.  Furthermore, it raises questions concerning the procedure followed by the trial court pursuant to Rule 587, which provides in pertinent part as follows:

> **(B) Double Jeopardy**
>
> (1) A motion to dismiss on double jeopardy grounds shall state specifically and with particularity the basis for the claim of double jeopardy and the facts that support the claim.
>
> (2) A hearing on the motion shall be scheduled in accordance with Rule 577 (Procedures Following Filing of Motion).  The hearing shall be conducted on the record in open court.
>
> (3) At the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law and shall issue an order granting or denying the motion.

---

material fact is the scope of the motion to dismiss that was advanced by trial counsel prior to Appellant's fourth trial.  As noted above, trial counsel adopted a *pro se* motion filed by Appellant that is not present in the certified record. ***See also*** Pa.R.Crim.P. 575(A)(1) ("All motions shall be in writing, except as permitted by the court or when made in open court during a trial or hearing.").

(4) In a case in which the judge denies the motion, the findings of fact shall include a specific finding as to frivolousness.

(5) If the judge makes a finding that the motion is frivolous, the judge shall advise the defendant on the record that a defendant has a right to file a petition for review of the determination pursuant to Rule of Appellate Procedure 1573 within 30 days of the order denying the motion.

(6) If the judge denies the motion but does not find it frivolous, the judge shall advise the defendant on the record that the denial is immediately appealable as a collateral order.

Pa.R.Crim.P. 587(B). Our review of the certified record indicates that the trial court did not hold a hearing on Appellant's motion to dismiss, declined to issue any factual findings or conclusions of law, and did not advise Appellant of his right to appeal or file a petition for review after denying the motion.[8] **See** N.T. Trial IV, 5/3/17, at 2-4. The trial court's compliance with Rule 587(B) similarly presents a question of material fact that must be assessed.

Finally, with respect to the ineffectiveness prong regarding the reasonableness of the basis for counsel's inaction, the available record is equally opaque as to why trial counsel did not press for the creation of a thorough factual record or file an immediate appeal on his client's behalf.[9]

---

[8] Specifically, the trial court only inquired as to whether trial counsel intended to present testimony in support of the motion to dismiss. **See** N.T. Trial IV, 5/3/17, at 3. After trial counsel responded in the negative, the attorneys presented brief oral arguments in support of the motion. **Id**. at 3-4. In response, the trial court stated: "Okay. The motion will be denied." **Id**. at 5.

[9] At the time of Appellant's fourth trial, it was well-established that "[p]re-trial orders denying jeopardy claims are immediately appealable in the
*(Footnote Continued Next Page)*

- 15 -

Similarly, there is no explanation regarding appellate counsel's apparent decision not to raise any claim respecting double jeopardy in Appellant's direct appeal. Without the benefit of testimony from these attorneys during a PCRA hearing, material questions certainly remain as to the bases for their decisions and the reasonableness thereof.

In its Rule 1925(a) statement, the PCRA court seems to suggest that it is powerless to address the paucity of the factual record. We must disagree. While we acknowledge the necessary burden of assuming responsibility for a case at the eleventh hour, we find that the PCRA court has abused its discretion in dismissing Appellant's petition without holding a hearing. Indeed, the PCRA court's Rule 1925(a) statement tacitly acknowledges that Appellant has raised material issues of fact that would benefit from further proceedings to supplement the factual record. Moreover, "one of the primary reasons PCRA hearings are held in the first place is so that credibility determinations can be made; otherwise, issues of material fact could be decided on pleadings and affidavits alone." **Commonwealth v. R. Johnson**, 966 A.2d 523, 539 (Pa. 2009). Here, we are without the benefit of such findings even with respect to the limited relevant record before us.

---

absence of a written finding of frivolousness by the hearing court." **Commonwealth v. Gross**, 232 A.3d 819, 830 (Pa.Super. 2020) (*en banc*) (citing **Commonwealth v. Feaser**, 723 A.2d 197, 199 n.2 (Pa.Super. 1999)).

Lacking the necessary factual findings, we are unable to assess the ultimate merits of Appellant's claims for relief. Accordingly, "[b]ecause the PCRA court here reached legal conclusions expressly premised upon incomplete factual findings, we must remand to the PCRA court to make necessary credibility determinations, factual findings, and to assess [the ineffectiveness factors] in light of those findings." *Id*. at 540-41. On remand, the PCRA court shall hold a hearing and permit Appellant to call witnesses and present evidence relevant to his claims of ineffectiveness as outlined in his amended PCRA petition.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2022